Betty E. DIVINE, Respondent,

v.

Larry M. DIVINE, Appellant.

No. 15432.

Missouri Court of Appeals,
Southern District,
Division One.

June 20, 1988.

Robert L. Stemmons, Stemmons & Stemmons, Mt. Vernon, for appellant.

Robert P. Baker, Sarcoxie, for respondent.

HOLSTEIN, Judge.

The marriage of the parties was dissolved by decree of the Circuit Court of Barton County. Larry M. Divine appeals, complaining that the trial court abused its discretion in its division of marital property and debts.

No issue exists as to our standard of review and no argument is made that the division of property and debts must be mathematically equivalent. Appellate courts must defer to the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The statute requires a fair and equitable division of the marital property in light of the circumstances, but does not require an equal division of marital property. *Dardick v. Dardick,* 670 S.W.2d 865, 869 (Mo. banc 1984).

Larry and Betty Divine were married in 1958 and reared two children who are now emancipated. During most of the marriage, the couple lived on and operated a farm, as well as being employed off the farm to supplement their income.

Financial problems, children leaving home, and individual psychological problems resulted in the couple's inability to communicate with each other and the ultimate breakdown of the marriage. By July of 1986, the relationship had deteriorated to the point that Betty and Larry were sleeping in separate bedrooms. Following an act of physical abuse by Larry, Betty left the home permanently, moving to Lamar on July 11, 1986.

On August 18, 1986, Betty filed her petition for dissolution of marriage. On October 14, 1986, Larry filed his counterclaim. Both pleadings alleged the marriage was irretrievably broken.

Betty testified that after the separation, Larry conducted late night surveillance of her trailer home in Lamar and repeatedly made phone calls, falsely accusing her of sexual misconduct. Because Larry was usually armed with a firearm, either in his

vehicle or on his person, Betty became frightened.

On the evening of January 31, 1987, after Betty had been to a dance with a male companion, she and the male companion returned to her home. Betty became ill and went to bed, while the man with whom she had been keeping company finished watching a movie on television, then left. Shortly after that, Larry telephoned, again accusing her of sexual misconduct. Betty became distraught and sometime after midnight, she went to the male companion's home where she spent the remainder of the night. It was that night when the first act of sexual intimacy occurred between Betty and the male companion. Betty testified that she had known the male companion for several months because both were members of a carpool, sharing rides to their common place of employment. However, there was no romantic involvement until November of 1986.

The trial court entered an interlocutory decree of dissolution of marriage in which it found, "that neither party is guilty of infidelity."

Thereafter, the court filed its final decree of dissolution in which it made a division of marital property. Under the decree of dissolution, Larry was awarded property which the court valued at $198,915. Betty was awarded property valued at $75,795.

The property awarded to Betty included certain real property "Subject, however, to any indebtedness secured by Deed of Trust, which indebtedness [Betty] is ordered to pay and to save and hold harmless [Larry] therefrom." The amount of the indebtedness was approximately $3,346. In addition, Betty was ordered to pay a $2,000 loan payable to Larry's father. The loan had been made for the purchase of an automobile which was awarded to Betty. Larry was ordered to pay the balance of the marital debts which amounted to approximately $146,150. Of that amount, $141,616 were debts owing to Larry's parents.

On appeal, Larry, taking a somewhat skewed view of the division of property and debts, argues that he received only 40.04% while Betty received 59.96% of the "net marital estate." Our review of the facts, as found by the trial court and supported by the record, indicates that Larry received "net marital property" of $52,798 while Betty received "net marital property" of $70,446, or approximately 43% for Larry and 57% for Betty.

Larry attacks the division of property on two fronts. The first argument is that the trial court erred in its interlocutory finding "that neither party is guilty of infidelity" when in fact, Betty admits to an act of sexual infidelity on about January 31, 1987, prior to the decree dissolving the marriage. From this, Larry concludes that the trial court improperly failed to consider Betty's misconduct during the marriage as required by § 452.330.[1] The second argument is that the court has, in effect, rewarded the wrongdoer because Larry was shown to be the "innocent and injured" party.

We agree in part with Larry's first argument. Sexual infidelity, even that occurring after separation, may be considered as "conduct during the marriage." *Potter v. Potter,* 720 S.W.2d 40, 42 (Mo.App.1986); *Burtscher v. Burtscher,* 563 S.W.2d 526, 527 (Mo.App.1978); § 452.330.1(4). However, misconduct is only a viable factor in dividing property when the misconduct places an extra burden on the other spouse. *Balven v. Balven,* 734 S.W.2d 909, 913 (Mo.App.1987). Where, as here, the act of infidelity by Betty occurred after the separation at a time when both parties had filed pleadings alleging that the marriage was irretrievably broken, the conduct complained of did not place any extra burden on the partnership endeavor. *Fausett v. Fausett,* 661 S.W.2d 614, 619 (Mo.App.1983). By that time, the partnership was defunct. The trial court's erroneous finding "that neither party is guilty of infidelity" was inconsequential because the misconduct had no

---

1. Unless otherwise indicated, all references to statutes are to RSMo, 1986.

demonstrable influence on the breakdown of the marital relationship.

 Larry's second argument, in which he characterizes himself as an innocent and injured party, is simply contrary to the evidence. Larry failed to communicate with Betty, committed physical abuse, engaged in telephone harassment of Betty, and made false accusations against Betty. His conduct before and after separation unquestionably placed undue stress on the partnership. The trial court had ample cause to tip the balance in Betty's favor on the question of conduct as it impacted on the division of marital property.

Larry is required to pay a greater proportion of the marital debts. The majority are debts owing to Larry's parents. The evidence indicated that Larry's parents had never insisted on regular or prompt payments and had gratuitously reduced the interest rates on the notes owing to them from time to time. Under such circumstances, the court may properly have discounted part of these debts, concluding that Larry may not be required to pay the full amount. See *Duebelbeis v. Duebelbeis*, 735 S.W.2d 106 (Mo.App.1987).

Another factor to be considered is the balance between income and nonincome-producing property. § 452.330.1(2). *Mika v. Mika*, 728 S.W.2d 280, 284 (Mo. App.1987). Here, virtually all the income-producing property was awarded to Larry, while Betty received no income-producing property. Almost all of the debt was associated with the income-producing property. To require a party who is receiving income-producing property to pay a debt associated with the property cannot be characterized as arbitrary or capricious.

Under all the evidence, we believe the court here gave due consideration to the nonexclusive statutory factors, and we find no abuse of discretion in the division of marital property. The judgment is affirmed.

CROW, C.J., and GREENE, P.J., concur.