William C. WINSLOW, Respondent,

v.

Dawn M. WINSLOW, Appellant.

No. ED 75753.

Missouri Court of Appeals,
Eastern District,
Division Five.

March 28, 2000.

Bruce F. Hilton, Lawrence G. Gillespie, Kirkwood, for appellant.

Patricia Riehl, Todd M. Siegel (Guardian Ad Litem), Hillsboro, for respondents.

ROBERT E. CRIST, Senior Judge.

Dawn Winslow (Mother) appeals from the trial court's judgment and decree of dissolution of her marriage to William Winslow (Father). On appeal, she challenges the child custody and child support provisions of the decree, as well as the disposition of a workers' compensation settlement to Father. We affirm in part and reverse and remand in part.

Mother and Father were married in 1992. A child, Z.W., was born of the marriage in 1993. Mother and Father separated in June of 1996 when Father left Mother and took Z.W. with him. Shortly after Father left, Mother was shooting heroin and threatening to kill herself. Father helped her get into a drug treatment

program at Queen of Peace. Mother also spent some time in July of 1996 in the psychiatric ward at Deaconess Hospital. Also in July of 1996, Father filed a petition for a protective order against Mother, "because she tried to run over me with a car with my baby in my arms and her two daughters at my side." Father requested custody of Z.W. in the petition. An order of protection was entered and the court awarded Father custody for six months. In July 1996, Father received a DWI while Z.W. was in the car with him.

In October 1996, Mother obtained an order of protection against Father in St. Louis City. He denied the allegations contained in it and claimed Mother had only obtained that order in an attempt to get custody of Z.W. while Father was serving 10 days in jail for his DWI.

From July to December 1996, Mother did not see Z.W. at all. In December of 1996, Father filed a petition for dissolution of the marriage. Around that same time, a hotline call was made against Father, alleging abuse at Father's father's house, where Father and Z.W. were living. The Division of Family Services (DFS) investigated the incident and concluded it was unsubstantiated. However, at this time, Father consented to give legal custody to DFS, but retained joint physical custody of Z.W. with Mother. This arrangement lasted until the middle of January 1997 when Father's order of protection expired. From January until March or April 1997, Mother saw Z.W. every weekend.

In March or April 1997, an allegation of sexual abuse of Z.W. was filed against Mother's boyfriend, with whom she was living at the time. DFS determined there was probable cause to believe Mother's boyfriend had abused Z.W. Mother denied any sexual abuse had occurred. She continued to live with her boyfriend until about November of 1997. After the allegations of abuse, Father retained physical custody of Z.W., but DFS allowed Mother only supervised visitation one hour per week.

At the time of trial, Father was working with a counselor through DFS to improve his parenting skills. He saw the counselor once every two weeks and the counselor also saw Z.W. every week. Father admitted to a drug and alcohol problem. At the time of the first day of trial, Father had been sober for 18 months and went regularly to Alcoholics Anonymous and Narcotics Anonymous meetings.

Mother testified about numerous occasions of abuse by Father during the course of their marriage, claiming Father had abused her and Z.W. throughout the marriage. Father testified there was physical abuse in the marriage, but denied that he had ever physically abused Mother or Z.W. He also denied ever physically assaulting her or threatening her in any way. The guardian ad litem appointed by the court recommended that Father receive custody of Z.W.

The petition for dissolution was tried on two days, May 13, 1998 and September 1, 1998. On September 10, 1998, the trial court entered its judgment and decree of dissolution. The court awarded custody of Z.W. to Father and provided Mother with reasonable rights of visitation according to the "Siegenthaler Schedule," a standard schedule of custody often used in decrees and derived from *Siegenthaler v. Siegenthaler*, 761 S.W.2d 262, 266 (Mo.App. E.D. 1988). The court ordered Mother to pay Father child support in the amount of $409 in accordance with the Form 14 submitted by Father. The court also awarded each party the personal property in their possession.

On September 30, 1998, Mother filed a motion to set aside the judgment and motion for new trial. In that motion, Mother sought to set aside the judgment because the award of custody of Z.W. to Father was not in the best interest of Z.W. She also objected to the amount of child support, contending there was a dispute of payments received by Father for day care. Finally, Mother contended that Father had

failed to disclose to the court that he had received proceeds from his workers' compensation settlement and that she was entitled to one-half of those proceeds. Between the two days of trial, Father settled a prior workers' compensation claim for 32 percent of the body as a whole, low back, for $32,000.

On December 11, 1998, the trial court entered an order sustaining Mother's request to consider the workers' compensation settlement in the division of assets. The court set this matter and Mother's motion to set aside for a hearing on January 11, 1999. The matter was continued until February 2, 1999. At that time, the trial court entered an order purporting to deny the motion to set aside as to child custody. The court also found the workers' compensation settlement was entirely for lost future wages and thus, not marital property to be divided. Finally, the court amended the child support amount to $276.00 per month in accordance with the joint Form 14 filed by both parties. This court granted Mother leave to file a late notice of appeal and she appealed from the trial court's judgment and decree of dissolution.

■ At the outset, we note the trial court did not have jurisdiction to enter its order and judgment of February 2, 1999. Mother had filed a timely motion for new trial, which extended the time before the judgment and decree of dissolution became final. However, pursuant to Rule 81.05(a) (1999), this extension is only at most for 90 days, because "the judgment becomes final at the expiration of ninety days after the filing of such motion or, if such motion is ruled on at an earlier date, then at the later of the date of disposition of said motion or thirty days after entry of judgment." Here, the trial court only had 90 days in which to act and its judgment and decree became final on December 28, 1999. Its failure to act before that time meant the motion was deemed· overruled as of that date. Rule 78.06 (1999); Rule 81.05(a) (1999); *Scott v. Flynn*, 936 S.W.2d

173, 174 (Mo.App. E.D.1996). Although the court appeared to sustain the motion as to the workers' compensation settlement, the court failed to enter any orders apportioning the settlement in a timely fashion. Therefore, the court exceeded its jurisdiction when it entered the "judgment" of February 2, 1999, and the ruling was without force or effect. *Heinen v. Healthline Management, Inc.*, 982 S.W.2d 244, 246 (Mo. banc 1998).

In Point I, Mother contends the trial court erred in awarding custody of Z.W. to Father because in doing so, the trial court failed to make any findings of fact regarding domestic violence. Mother argues the statutes mandate that the court determine if domestic violence occurred and if so, whether its award of custody to an abusive parent was in the best interests of the child.

Mother relies upon sections 452.375.13 and 452.400.1. Section 452.375.13, RSMo Cum.Supp.1999, governing child custody, provides:

13. If the court finds that domestic violence or abuse, as defined in sections 455.010 and 455.501, RSMo, has occurred, the court shall make specific findings of fact to show that the custody or visitation arrangement ordered by the court best protects the child and the parent or other family or household member who is the victim of domestic violence or abuse, as defined in sections 455.010 and 455.501, RSMo, from any further harm.

Section 452.400.1, RSMo Cum.Supp.1999, provides, in pertinent part:

1. . . . In determining the granting of visitation rights, the court shall consider evidence of domestic violence. If the court finds that domestic violence has occurred, the court may find that granting visitation to the abusive party is in the best interests of the child. . . . The court shall consider the parent's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the

fear of physical harm, bodily injury, or assault on other persons and shall grant visitation in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm. The court, *if requested by a party*, shall make specific findings of fact to show that the visitation arrangements made by the court best protect the child or the parent or other family or household member who is the victim of domestic violence from any further harm. (Emphasis added.).

█ Mother relies upon *Mund v. Mund*, 7 S.W.3d 401 (Mo. banc 1999) to support her point. In *Mund*, the Supreme Court of Missouri remanded the case to the trial court to enter a finding as to whether domestic violence occurred as that term was defined in sections 452.375.12 and 452.400.1, RSMo Cum.Supp.1997, and if so, to make additional findings regarding the safety and welfare of the affected family and household members. *Id.* at 404. *Mund* is inapplicable to Mother's case in several regards. First, section 452.400.1 was specifically amended in 1998 to only require specific findings of fact *if requested by a party*. No party requested specific findings in this case.

In addition, the Supreme Court in *Mund* noted that if a trial court does not make explicit findings, the appellate court may presume the court made implicit findings in accordance with the result reached. *Mund*, 7 S.W.3d at 403. In *Mund*, the Court could not presume the trial court made implicit findings because a finding that no domestic violence occurred would have been against the weight of the evidence where the parties admitted to numerous incidents of domestic violence between the parties. *Id.* Here, there are no such admissions of numerous incidents and a finding of no domestic violence would not have been against the weight of the evidence. Although Mother testified about various acts of physical abuse by Father, Father completely denied it during his tes-

timony. Although Father testified there was physical abuse in the marriage, he denied he ever abused Mother or Z.W. No one asked Father to clarify his statement and he never elaborated on any possible physical abuse by Mother. The only incident about which Father testified was the one precipitating the order of protection in July of 1996 in which he claimed Mother had tried to run him over with her car. No testimony was elicited from Mother regarding any admission or denial of the incident. The court was in a position to judge the believability and the credibility of the witnesses and could have implicitly found there was no domestic violence or abuse. Point denied.

In Point II, Mother contends the trial court abused its discretion in awarding Husband all of his workers' compensation settlement. Alternatively, Mother argues the court misapplied the law by including the settlement in the trial court's allocation of the personal property or if the trial court implicitly found the settlement was Father's separate property, there was insufficient evidence to support this finding.

On the first day of trial, May 13, 1998, Father testified he was injured at work in November of 1995. On the second day of trial in September 1998, Mother testified he received $920 every two weeks in workers' compensation benefits. When asked if he received a settlement on that, Mother said "[h]e has had to have by now." Mother speculated that was how Father had been able to buy a trailer and car, but she had no independent knowledge of a settlement. No further evidence was presented on the issue. In her motion for new trial, Mother sought a share of a lump sum workers' compensation settlement for $32,000 entered on July 30, 1998, between the two days of trial in their divorce. Mother noted that Father had not disclosed the settlement and attempted to conceal its receipt so Mother would not get a share. As we noted above, Mother's motion for new trial was overruled by operation of law on December 29, 1998.

In *Pauley v. Pauley*, 771 S.W.2d 105, 109–10 (Mo.App. E.D.1989), this Court held that lump sum awards of workers' compensation benefits are non-marital assets to be set aside as separate property "to the extent these awards compensate ... for future loss of earnings that have accrued since the dissolution of the parties' marriage." However, to the extent the award compensates a party for loss of earnings during the marriage, that portion of the award is marital property. *Id.* at 109; *See also, Heslop v. Heslop*, 967 S.W.2d 249, 254 (Mo.App. W.D.1998); *Wilk v. Wilk*, 781 S.W.2d 217, 223 (Mo. App. E.D.1989).

■ Here, the record does not establish any information regarding what percentage, if any, of Father's lump sum award compensates him for loss of earnings during the marriage, versus loss of future earnings. Mother attached a copy of the lump sum settlement to her motion. That settlement shows the parties had disputes as to "temporary total, permanent partial, or permanent total disability, and future medical treatment" and that as a result of the disputes, they were entering into a compromise lump sum settlement. Temporary total disability benefits could have compensated Father for loss of earnings during the marriage because they are the type of benefit used to compensate employees while they are out of work due to a work-related injury. Father was out of work during the marriage. The record fails to disclose the information necessary for computing the portion of the award, if any, allocable as marital property. The trial court did not obtain this evidence at the dissolution hearing. Further, the court lost jurisdiction on December 28, 1999, to rule on this issue raised in the motion for new trial.

■ In Point III, Mother contends the trial court erred in ordering her to pay child support in the amount of $409, because Father overstated his child care expenses on his Form 14 and the evidence shows he only paid $45 per week for child care instead of $90 due to a DFS reimbursement. Father agrees and joins with Mother and asks this court to enter a child support award of $276 per month pursuant to a jointly prepared Form 14 submitted by both parties on February 2, 1999. The trial court had entered an amendment to the child support in accordance with the parties' agreement, but the court was without jurisdiction at that time to enter that award. Since this case will be remanded for additional proceedings on the workers' compensation settlement, we choose to remand the child support issue to the trial court for its determination in accordance with the parties' agreement.

We reverse and remand the judgment for additional proceedings on the record for the trial court to determine what portion of the workers' compensation settlement is marital or separate and for additional proceedings on the child support issue. The judgment is in all other respects affirmed.

MARY RHODES RUSSELL, C.J., concurs.

LAWRENCE G. CRAHAN, J., concurs in part and dissents in part.

LAWRENCE G. CRAHAN, Judge, concurring in part and dissenting in part.

I concur in the majority opinion except for the treatment of Father's workers' compensation settlement. The record established that Father had been injured on his job as a roofer in November of 1995. He received weekly workers' compensation benefits until approximately three months prior to trial totaling $57,876.90. Father began working again the Monday after he was released by the doctor to return to work and his weekly benefits ceased. In July, 1998, between the two widely-separated trial dates, Father entered into a lump sum settlement of his pending claims for $37,000.00 based on approximate disability of 32% of the body as a whole referable to the lower back.

I can find nothing in the record to suggest that any portion of Father's lump sum

settlement can properly be characterized as additional payments for temporary total disability. An employer only owes temporary total disability until the claimant can find employment or the condition has reached maximum medical progress. *Cooper v. Medical Center of Independence*, 955 S.W.2d 570, 575 (Mo.App. 1995). Given Father's testimony that he received full weekly benefits until he was released by the doctor and that he returned to work immediately thereafter, Father presumably received all of the temporary total disability payments he was entitled to receive.[1] It follows that the amounts paid in the lump sum award could only be for Father's disputed claim of permanent partial or permanent total disability. Amounts paid for permanent partial or permanent total disability are not martial property. *Pauley v. Pauley*, 771 S.W.2d 105, 109-10 (Mo.App. 1989).

Moreover, even if some minor portion of the lump sum award could arguably have been shown to be marital property, Mother waived such claim. Mother testified that she assumed Father had entered into a lump sum settlement of his workers' compensation claim. Shortly thereafter, her attorney elicited the following concession:

> Q. You've also asked the Court to basically divide the martial property. Is there any martial property that you have an interest in that you want the Court to consider?
>
> A. Not a thing.

I would hold that by this testimony. Mother waived any right to complain of the trial court's failure to inquire further into whether any portion of Father's workers' compensation settlement was marital property.

---

1. Although temporary total disability is specified as one of the disputed items settled by the lump sum settlement, it is reasonable to assume that the employer, not Father, was disputing this aspect of the claim inasmuch as Father had already received these benefits for the duration of his disability.