Denise PETTIES, Respondent,

v.

James Marvin PETTIES, Appellant.

No. WD 62724.

Missouri Court of Appeals,
Western District.

March 30, 2004.

Dennis J.C. Owens, Kansas City, for Appellant.

Mitzi J. Alspaugh, Kansas City, for Respondent.

RONALD R. HOLLIGER, Judge.

This appeal arises from the trial court's division of marital property and debts acquired during the nearly fifteen-year marriage between James Petties ("Husband") and Denise Petties ("Wife"). Husband appeals certain aspects of that property division, contending that certain assets were incorrectly classified as marital property, were improperly valued by the court, or were inequitably divided between the parties. Husband also contends that the trial court erred by assigning nearly all of the marital debt to him. We agree with a number of Husband's assertions of error and reverse and remand the matter for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

The parties were married on September 22, 1984, and there was one child born of

the marriage.[1] While the parties both lived initially in Oklahoma, Wife moved to Kansas City (her original home) about eight or nine months after the marriage. The parties remained married for over fourteen more years, however.

Wife filed her petition for dissolution in August 1998, which proceeded to a default decree in March 1999. That default judgment divided only those properties listed on Wife's statement of marital assets and debts. There were a number of assets and debts that were not set out in that document, however. Among the undivided assets were a number of rental properties in Tulsa, Oklahoma, and a workers' compensation claim settlement payment to Husband, as well as other assets. Husband timely moved to set aside the original judgment, based upon the failure of the judgment to divide all of the marital property and debts. That motion was granted, and the case proceeded to trial on the issue of the division of the remaining marital property and debts.

Despite the sheer number of assets and debts involved, the trial was very brief, including suggestions in the record that the trial court limited or actively discouraged the parties from presenting evidence relevant to the property division. In December 2002, the trial court entered a new judgment setting forth a complete property division. This second judgment essentially incorporated the original dispositions of the property and debts allocated in the first judgment and then proceeded to address those items that were not awarded to either party in the original judgment. While there is some disagreement as to the precise division, there appears to be a consensus that Husband was awarded a somewhat larger share of marital property than was awarded to Wife. Husband, however, was allocated nearly all of the marital debt, which was well in excess of $100,000.

Husband now appeals the trial court's judgment.

## DISCUSSION

Our review is guided by the standard of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *King v. King*, 66 S.W.3d 28, 32 (Mo.App.2001). We will reverse the trial court only if we conclude that the judgment was against the weight of the evidence, was not supported by substantial evidence, or misstated or misapplied the law. *Id.* We will reverse a judgment as against the weight of the evidence "only with caution and a firm belief that the judgment is wrong." *Id.* The trial court is vested with broad discretion in identifying marital property and in determining the value of that property. *See Morse v. Morse*, 80 S.W.3d 898, 905 (Mo.App.2002); *Luckeroth v. Weng*, 53 S.W.3d 603, 609 (Mo.App.2001). We view the evidence in the light most favorable to the judgment and give substantial deference to the trial court's judgment, even if the evidence could support a different conclusion. *Taylor v. Taylor*, 25 S.W.3d 634, 638 (Mo.App. 2000).

## I. Income and Other Proceeds That No Longer Existed at the Time of Trial

For his first point on appeal, Husband contends that the trial court erred in its division of marital property when it included as marital property: (a) proceeds arising from the sale of two rental properties, (b) income from rental of other properties, and (c) disability replacement income received by him. He argues that those funds, even if marital, no longer existed at the time of the property division. Specifi-

---

1. There are no child custody, visitation, or support issues raised on appeal.

cally, he takes the position that those funds had been used for living expenses, as well as used for making repairs and maintenance on the rental properties. Husband also points out that there was no evidence or allegations that Husband had committed misconduct or had squandered those funds.

■■■ A marital asset must exist at the time of trial to be considered within the property division. *Kester v. Kester*, 108 S.W.3d 213, 222 (Mo.App.2003). Income received during the marriage is marital property. *See id.* at 221. Funds flowing from the sale of a marital asset are also clearly marital property. *See, e.g., Williams v. Williams*, 965 S.W.2d 451, 455 (Mo.App.1998) (proceeds from sale of house acquired during the marriage were marital property). When those proceeds have been consumed for reasonable and necessary purposes, however, they will no longer be considered part of the marital property subject to division.[2] *See Cofer v. Price–Cofer*, 825 S.W.2d 369, 373 (Mo.App. 1992). For example, funds used for reasonable living expenses are not to be included in the division of marital property. *See Kester*, 108 S.W.3d at 222–23. *See also, Sinclair v. Sinclair*, 837 S.W.2d 355, 359 (Mo.App.1992).

■■■ Conversely, if a party has squandered marital property (including income or funds received during the marriage), then the trial court may include that property in the marital property division, even though it no longer exists, allocating it to the spouse that squandered it or ordering that spouse to reimburse the other party. *See Kolar v. Kolar*, 114 S.W.3d 440, 443 (Mo.App.2003); *Reynolds v. Reynolds*, 109

S.W.3d 258, 276 (Mo.App.2003). The burden of establishing that marital property has been squandered lies with the spouse claiming that the asset was squandered, who must come forward with evidence in support of that contention. *See Adams v. Adams*, 108 S.W.3d 821, 831 (Mo.App. 2003) (quoting *Conrad v. Conrad*, 76 S.W.3d 305, 315 (Mo.App.2002)). Here, there is no suggestion by Wife, no finding by the court, nor substantial evidence that Husband squandered those assets.

■■ With those general principals in mind, we examine the three categories of income or funds received by Husband that he alleges were erroneously included in the marital property division. The first category is comprised of the proceeds from the sale of two rental properties sold by husband. Those properties were 1342 North Denver Avenue and 525 E. 49th Street Court North, both in Tulsa, Oklahoma. The former property was sold before the entry of the 1999 dissolution judgment and the latter was sold between the date of the dissolution and the judgment being appealed from.[3] Husband contends that there was no evidence that the monies received still separately existed apart from the other assets divided by the court. Husband contends that the proceeds from the sale of those properties were reinvested in the remaining rental properties and should not have been treated as a separate asset within the property division.

As the properties sold were marital property, their proceeds would be properly treated as marital property. To that extent, the trial court's analysis is correct. However, Husband argues that those pro-

---

2. Naturally, however, if those funds are used to purchase some other identifiable asset, then that asset is marital property that is subject to division by the trial court, pursuant to the "source of funds" rule. *See Williams v.*

*Williams*, 965 S.W.2d 451, 454 (Mo.App. 1998).

3. Neither of these properties was included in the original decree.

ceeds were no longer in existence at the time of trial because those funds were reinvested in the other rental properties, for maintenance and remodeling. If that was indeed the case, then the trial court could not properly treat those proceeds as a marital asset subject to division. Having done so, it divided those funds twice—first as the sale proceeds and again by dividing the rental properties on which the funds were expended. There was no suggestion in the record that Husband squandered the proceeds received from the sale of these two rental properties. Those funds were no longer in existence at the time of trial; therefore, the trial court erred in including them in the division of marital property and awarding them to Husband.

■ The second category of funds identified by Husband as erroneously included in the marital property division is composed of income received by Husband from the rental properties. With regard to those rental proceeds, Husband argues that those proceeds were used to pay living expenses. There was also evidence that some of that income was used for additional maintenance and repairs to the rental properties. Again, there was no allegation that the funds were squandered or that any portion of them still existed at the time of trial. The trial court erred in including the rental proceeds in the division of marital property.

■ The last category of funds Husband argues were improperly included in the marital property division concerns disability income he received from November 1998 through April 1999. He takes the position that the income in question was spent on living expenses, attorney fees,

and also to refurbish the rental properties. He also notes that a substantial portion of that income was also spent on child support payments. As with the prior two categories, there was no argument that the funds were squandered by Husband. Nor is there any suggestion in the record that those funds still existed in some form. The trial court erred in including those funds in the division of marital property.

We, therefore, sustain Husband's first point on appeal and reverse the trial court's determination that these three categories of funds should be included in the property division.

## II. Settlement Proceeds from Husband's Workers' Compensation Claim

■ Husband's second point on appeal argues that the trial court erred by classifying as marital property a $14,555 lump-sum settlement of a workers' compensation claim.[4] The claim arose from a work-related injury sustained during the marriage, and the claim was filed during the marriage. The resulting settlement and lump sum payment, however, took place sometime after the March 1999 dissolution judgment.

■ Lump sum workers' compensation awards, even when received during the marriage, are not necessarily wholly marital property. To the extent that the award compensates for earnings lost during the marriage, that portion of the award is marital property. *Winslow v. Winslow*, 14 S.W.3d 690, 695 (Mo.App.2000). Conversely, if the award or a portion thereof is compensation for future earnings that

---

4. In Husband's argument under this point on appeal, he also discusses periodic payments to him under the terms of the settlement and challenges their inclusion as marital property. We do not reach that issue, however, as it

falls outside the scope of his stated point on appeal. *See In the Interest of W.S.M.*, 845 S.W.2d 147, 149 n. 1 (Mo.App.1993). This issue can be considered on remand.

would have accrued after the dissolution, then that portion of the award is nonmarital. *See id.* In our view, similar principles apply to amounts received in settlement of a workers' compensation claim.

 In applying this principle, however, it is important to consider when the settlement was "acquired." All income or property acquired during the marriage is presumed to be marital property. *See Heslop v. Heslop,* 967 S.W.2d 249, 254 (Mo.App.1998). That presumption may only be rebutted upon presentation of clear and compelling evidence that the property is nonmarital. *See Coughlin v. Coughlin,* 823 S.W.2d 73, 75 (Mo.App. 1994). Conversely, if property was acquired outside the marriage, it is presumed to be nonmarital. In both situations, the party seeking to defeat the presumption bears the burden of presenting evidence on the issue. *See* 967 S.W.2d at 254.

 With regard to most property, determining the date of acquisition is relatively straightforward, as it is the date the property is purchased or received. In other circumstances, however, the date of acquisition is considered to be when the recipient acquires legal rights or interests in the property. *See Clance v. Clance,* 127 S.W.3d 716, 722 (2004). Here, the important date is not when Husband received the workers' compensation settlement, but rather instead when he was injured. A number of cases have held that a personal injury claim that arises out of an injury during the marriage is presumed to be marital property. *See Al–Yusuf v. Al–Yusuf,* 969 S.W.2d 778, 785–86 (Mo.App. 1998); *Jobe v. Jobe,* 708 S.W.2d 322, 325 (Mo.App.1986); *McClement v. McClement,* 681 S.W.2d 500, 503 (Mo.App.1984). Thus, as the workers' compensation settlement arose from an injury that occurred during the marriage, the settlement is presump-tively marital, and it fell to Husband to rebut that presumption by clear and convincing evidence.

Ultimately, then, the success of Husband's argument hinges on whether he presented clear and convincing evidence that any portion of the workers' compensation settlement was nonmarital property. We are unable to reach this issue, however. While, the workers' compensation settlement sheet was admitted into evidence at trial, it has not been made a part of the record on appeal. We therefore have no way of knowing to what extent, if any, the lump sum was broken down into separate amounts reflecting past and future earnings. Aside from that exhibit, whose contents are unknown to us, it does not appear from the record that there was any other evidence before the trial court as to what portions of the lump sum settlement constituted compensation for wages lost prior to the dissolution and what portion was to compensate for future earnings after the date of the dissolution.

It was Husband's obligation, as appellant, to provide this court with an adequate record on appeal. *See* Rule 81.12(c). Without the workers' compensation settlement before us, we cannot evaluate Husband's claim of error on this point. *See McAllister v. McAllister,* 101 S.W.3d 287, 293 (Mo.App.2003). Although we could completely deny this point on that basis, we decline to do so, given that the trial court, on remand, will be so broadly reconsidering the division of property.

### III. Property Valuation Issues

 Husband's third point on appeal challenges the trial court's valuation of three items of marital property. While a trial court has broad discretion in valuing marital property, the court cannot set a value that is not supported by the evidence. *See Morse v. Morse,* 80 S.W.3d

898, 905 (Mo.App.2002). Of the three valuation issues raised by Husband in this point on appeal, two involve situations in which the trial court assigned a value that was not supported by the evidence. In the third situation, while the valuation was supported by the evidence, it was facially inconsistent with the trial court's stated reasoning in determining the value of the property in question.

Husband first contends that the trial court erred in assigning a value of $10,000 to "body shop and construction tools" awarded to him in the property division. There was evidence that Husband had tools located on one of the properties awarded to Wife, but it was disputed whether Husband had been able to recover them or whether those tools had been stolen or lost. The only discussion regarding the value of those tools was Husband's claim for a $2,288.56 setoff for the loss of those tools. We agree with Husband that the trial court's valuation of the tools was unsupported by substantial evidence in the record.

Wife responds that, regardless of the value of the tools, any error regarding the value of the tools was not prejudicial and does not require reversal because that value was, at best, an insignificant percentage of the overall property distribution. Given that reversal is required upon other issues, however, we see no reason to deny Husband's argument on that basis.

Husband also argues that the trial court erred by assigning a value of $8,000 to the 1991 Ford truck that was awarded to him in the property division. Husband contends that he paid $1,700 for the vehicle and introduced a note at trial to establish that value, though he provides no citation to the record for that claim. While Wife contends that there were "discovery documents submitted at the default hearing" that established a different value for that vehicle, she gives us no citation to

the record for that contention, nor are the referenced documents included in the record on appeal. In any event, the value relied upon by the trial court was the value set within the original 1999 judgment. That valuation was significantly removed in time from the date of trial. Generally, property should be valued as of the date of trial. *Morse,* 80 S.W.3d at 905. It follows that the 1999 valuation would not have been a proper basis for making a determination at trial as to the value of the truck in 2002. On remand, the trial court should determine the current value of the vehicle.

Husband's last argument on this point concerns the valuation of four rental properties in Tulsa, Oklahoma. Husband presented evidence that the properties were worth $4,000 total, while Wife's evidence suggested a total value of $12,000. The trial court found that the properties were worth $12,000, under a stated rationale that the value "has been determined by subtracting the difference between the values presented by the parties." Such a calculation would have yielded a value of $8,000, however, not the $12,000 stated in the judgment. Wife concedes that the valuation does not reflect the stated rationale, but essentially argues that it was within the range of the evidence presented.

While the value assigned would have been supported by the evidence, it nevertheless is a value that is incorrect under the trial court's reasoning. Based upon the trial court's reasoning, the value assigned to the properties is $4,000 too high. As each of the identified property valuations is either unsupported by substantial evidence or is contrary to the trial court's stated reasoning, we sustain Husband's third point on appeal.

## IV. Classification of the Fidelity/Ford Stock Fund

In his fourth point, Husband contends that the trial court erred by classify-

ing the Fidelity/Ford Stock Fund as marital property, as it was acquired after the 1999 decree of dissolution. Wife suggests, without citation to the record, that the Fund was acquired during the marriage. Review of the record, however, reveals no testimony or other evidence as to when this stock fund was acquired. The trial court had no evidentiary basis for determining whether the fund was acquired during the marriage, whether it was acquired outside the marriage, or some combination of the two. Thus, it had no grounds for determining whether the Fund was marital or nonmarital property. *See, e.g., Sturgis v. Sturgis* 663 S.W.2d 375, 382 (Mo.App.1983).

We sustain Husband's fourth point on appeal, and remand for the reception of additional evidence bearing on the issue of whether the Fidelity/Ford Stock Fund, in whole or in part, is marital property.

## V. The Award of Three Rental Properties to Wife

■ Husband's fifth point argues that the trial court erred in awarding Wife three rental properties. He contends that the trial court failed to consider his contributions to the acquisition of those properties, as required under Section 452.330, RSMo.[5] Husband also takes the position that it was inequitable to award those properties to Wife while he was allocated the debts associated with the properties.

Husband makes the following claims, in arguing that he made a greater contribution towards the acquisition of those rental properties:

(a) Husband "incurred substantial debt in acquiring the rentals and fixing them up;

(b) Husband managed the properties alone for years prior to the divorce;

(c) Wife had no involvement with managing the properties from the time she left Oklahoma in 1992; and

(d) The only financial contribution Wife made to the properties was taking out a loan from Bannister Bank for repairs on the property located at 514 E. Zion Street, Tulsa Oklahoma.

Again, Husband fails to support a number of these claims with any citations to the record. The only allegation that has clear support in the record concerns Wife's contributions to the Zion property. From our review of the record, though, it is apparent that the trial court discouraged or otherwise limited evidence regarding the parties' contributions to the acquisition and maintenance of the rental properties.

Wife takes the position that there was sufficient evidence that the trial court considered the statutory factors and that the division of the property and debts was equitable, especially in light of Husband's superior earning capacity. However, her argument essentially concedes that the trial court limited and was not receptive to evidence bearing on the statutory factors.

In any event, we need not reach the merits of this issue, given that that the judgment is being reversed on other issues regarding the property division. On remand, the trial court may need to reexamine the award of these marital properties in determining an equitable division of the marital property. In that process, the trial court is encouraged to permit the par-

---

**5.** The argument section of Husband's fifth point on appeal also raises issues regarding the other factors outlined in Section 452.330, RSMo, that are to be considered by the court in making its property division. Those other arguments are outside the scope of Husband's stated point on appeal and will not be addressed by this court, for the reasons articulated with regard to Husband's third point on appeal.

ties to present evidence bearing upon the factors outlined in Section 452.330, RSMo.

### VI. Division of Marital Debt

In his final point, Husband argues that the trial court erred by allocating nearly all of the marital debt to him, with nearly $130,000 in debt being allocated to him and only $275 being allocated to Wife. He takes the position that this division was inequitable, given that both parties incurred the debts, have ability and assets to pay those debts, and misconduct was not a factor.

The trial court has broad discretion to divide the marital debts. *Wright v. Wright,* 1 S.W.3d 52, 60 (Mo. App.1999). As with the property division, the division of marital debts need not be equal. *Kocsis v. Kocsis,* 28 S.W.3d 505, 509 (Mo.App.2000). It must be equitable, however. *Id.* In general, the factors under Section 452.330, RSMo, guide the proper division of marital debts. There are other factors that can support an unequal distribution of marital debts, however. For example, an unequal distribution of marital debt is not an abuse of discretion when the spouse receiving the greater share of the debt has also received the income-producing property associated with that debt. *See Divine v. Divine,* 752 S.W.2d 76, 79 (Mo.App.1988).

Here, however, we are dealing with a situation in which Husband was awarded over ninety-nine percent of the marital debts. While, even under Husband's calculations, Husband was awarded a greater share of the marital property, that imbalance is more than outweighed by the debts allocated to Husband. Similarly unbalanced divisions of debt have been reversed on appeal as an abuse of discretion. *See, e.g., Capehart v. Capehart,* 110 S.W.3d 920, 926–27 (Mo.App.2003).

He specifically identifies three debts for closer examination. First, he addresses the mortgage debt on the property in which he resides. There were two mortgages on that property, standing at $72,000 at the time of trial. Husband contends that his portion of the property division should have been offset by the mortgage debt on his residence. In support of his argument, he relies upon *Oldfield v. Oldfield,* 688 S.W.2d 778 (Mo.App.1985), which held that liens against a business should have been considered in determining the value of the marital property for purposes of division.

As a preliminary matter, we note that *Oldfield* no longer reflects the current approach to the treatment of debts in dissolution cases. When *Oldfield* was decided, it was unnecessary to divide marital debts as part of a dissolution judgment. *See id.* at 781. While the trial court could allocate the parties' debts, it was not required to do so. Instead, it was only required to consider those debts (and who was responsible for paying those debts) in making its division of the martial property. *Johnston v. Johnston,* 778 S.W.2d 674, 677 (Mo.App. 1989). Essentially, in determining the value of the marital assets, a trial court could consider the net effect of the debts associated with those assets. *See Golleher v. Golleher,* 697 S.W.2d 547, 549 (Mo.App. 1985).

Section 452.330.1, was amended in 1998 to expressly require the division of marital debts, in addition to marital property. *Michel v. Michel,* 94 S.W.3d 485, 488 (Mo. App.2003). Thus, the *Oldfield* approach, whereby debts were merely to be "taken into consideration" in determining the proper division of marital property, has been supplanted by the statutory requirement that the marital debts be divided along the same principles as marital property is divided.

Husband also argues that the allocation of the entire mortgage debt to him was

inequitable because the trial court awarded to Wife three of the income-producing properties that he utilized to help pay the mortgage debt. He does not argue that he was not awarded sufficient income-producing assets remaining to continue supporting that debt. He was also awarded the asset, namely his residence, that secured that debt, as well as a number of other rental properties. Upon the record before us, we cannot conclude that the allocation of the entire mortgage on Husband's residence to him was an abuse of discretion.

The other two debts specifically raised by Husband concern debts associated with the rental properties awarded to Wife in the property division. The first of those debts is a $7,500 debt owed to Dennis Hammond, a carpenter who worked for Husband to remodel two of the rental properties that were ultimately awarded to Wife.[6] The second is a $6,500 loan that Wife obtained from Bannister Bank during the marriage for the purposes of refurbishing the Zion Street property that was later awarded to her in the property division.

From the record before the court, it appears that both of these debts were acquired during the marriage; thus, they are presumptively marital. *See* § 452.330, RSMo; *Wright,* 1 S.W.3d at 60. We hold that the trial court abused its discretion, especially in light of the overall debt division, to allocate those debts to Husband. Those debts are associated with the rental properties awarded to Wife. For example, the Bannister Bank loan is secured by the Zion Street property awarded to Wife. Because we are remanding for reconsideration of the award of these rental properties, the court may also reconsider the allocation of the debt, if any, connected to these properties.

## Conclusion

The judgment below contains a number of serious errors that require reversal to remedy. The trial court has improperly included in the division of marital property assets, which no longer existed at the time of trial. It may have erroneously classified the entirety of Husband's workers' compensation claim settlement as marital property, even though a portion of that settlement was compensation for future, nonmarital, income. Certain valuations made by the trial court were not supported by substantial evidence. The court also failed to consider required factors in dividing rental properties.

We, therefore, reverse the judgment below and remand for further proceedings consistent with this opinion.

EDWIN H. SMITH, Presiding Judge, and LISA WHITE HARDWICK, Judge, concur.

---

**6.** Husband contends that this debt was allocated to him, though upon review of the judgment, we cannot find any indication in the judgment where the trial court discussed or allocated that debt. It is also unclear from the record whether the trial court believed Husband's testimony regarding the existence and amount of that debt.