In re the MARRIAGE OF Sheila Darlene ELLIOTT and Robert Earl Elliott.

Sheila Darlene Elliott, Petitioner–Appellant,

v.

Robert Earl Elliott, Respondent–Respondent,

and

Mary Elliott and Mary Elliott as Trustee of the Mary Elliott Revocable Trust, Respondents.

No. 26389.

Missouri Court of Appeals, Southern District, Division One.

Nov. 29, 2005.

John R. Briggs, Law Offices of Sotta and Crane, P.C., Joplin, for appellant.

Susan S. Jensen, Pratt, Fossard, Jensen & Masters, L.L.C., Springfield, for respondent.

PHILLIP R. GARRISON, Presiding Judge.

Sheila Darlene Elliott ("Wife") appeals from a judgment dissolving her marriage to Robert Earl Elliott ("Husband"). She contends that the trial court erred in finding that there was a bona fide debt owing to Mary Elliott, ("Mary"), Husband's mother; in factoring that debt into the division of property, which she claims resulted in Husband actually receiving a disproportionate percentage of property; and in finding that Wife's signature was not forged on a warranty deed conveying part of the marital estate to Mary. She also contends that the trial court erroneously failed to designate whether some property distributed by the trial court was marital or nonmarital.

The parties were married on October 30, 1985, and separated on November 26, 2001. Wife worked as a licensed practical nurse prior to their son's birth. From the time of his birth until he started school, Wife occasionally helped Husband run a concession stand, and did some work at his car lot. Although Wife had intermittently taken some courses, it was not until after their son started school that she concentrated on earning her registered nurses license. She then worked as a nurse thirty to forty hours per week.

During the marriage Husband worked as a real estate agent and owned rental property, a used car lot and a bail bonding company. In addition, the family owned several pieces of real estate. Generally, Husband was responsible for managing the family's finances and Wife was responsible for maintaining the household. Husband and Wife kept separate bank accounts and Wife was generally not apprised of Husband's businesses or his real estate transactions, however, from time to time she was asked to sign documents pertaining to real estate.

By December 2001, Husband's businesses had begun to falter and he did not have the funds to operate them or pay the family's bills. He found himself with increasing debt under a line of credit loan from a local bank in the amount of $150,000, various credit card balances and the taxes on the family's real estate holdings. Mary agreed to pay off these debts totaling approximately $269,000 in exchange for five tracts of land, which were conveyed to her by the warranty deed in question here. In addition, from the time Husband's businesses began to falter and continuing until the dissolution hearing, Mary gave Husband money to cover all of his expenses, totaling approximately $150,236.

On December 13, 2001, Wife filed a petition to dissolve the marriage and she was later permitted to join Mary as a necessary party. She also filed an amended petition seeking to set aside the warranty deed to Mary conveying what she claimed was a substantial portion of the marital estate, based on her contention that her signature had been forged. The trial court heard evidence on the amended petition for dissolution of the marriage and entered its judgment in which it, *inter alia*, dissolved the marriage, distributed the property and debts and held against Wife on her claim to set aside the warranty deed. In connection with the distribution of property the trial court found that there was a bona fide debt to Mary in the amount of $150,236 and it distributed it to Husband. Wife filed a motion to reconsider or for new trial, which the trial court overruled. This appeal followed.

Our review of a dissolution of marriage judgment follows the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[1] A dissolution decree will be affirmed unless there is no substantial evidence to support it; it is against the weight of the evidence; or it erroneously declares or applies the law. *Gryder v. Gryder*, 129 S.W.3d 467, 470 (Mo.App. S.D. 2004). We view the evidence in the light most favorable to the dissolution decree. *Petties v. Petties*, 129 S.W.3d 901, 905 (Mo.App. W.D.2004). It is for the trial court to determine the weight and value to be given to the witnesses. *Id.*

■ Wife's first two points are interrelated. Essentially, she argues that the payments from Mary totaling $150,236 did not constitute a bona fide loan to be attributed to the marriage, and because the trial court used this alleged loan in equalizing the distribution of marital property its division of the net marital estate was inequitable. In this regard she contends that Husband received seventy-two percent of what she characterizes as marital property versus twenty-eight percent awarded to her. She notes that by deducting $150,236 assigned to Husband as a debt to Mary, the net estate allocated to Husband was reduced to $64,524 versus $61,593.14 for her.[2]

■ "[T]he existence of a loan is 'heavily dependent on the trial court's determination of the credibility of the witnesses.'" *Gryder*, 129 S.W.3d at 472 (quoting *Panettiere v. Panettiere*, 945 S.W.2d 533, 543 (Mo.App. W.D.1997)). Husband testified that he owes Mary $150,236. The trial

1. *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that rule now appear in essentially the same form in Rule 84.13(d), Missouri Rules of Civil Procedure (2004).

2. Apparently Wife arrives at these numbers by adding the value of that property she determined was awarded to both her and Husband as nonmarital to the net value of what she considers was the marital estate that each of them received under the dissolution decree.

court received copies of checks written by Mary to Husband, or on his behalf, totaling $140,736 and there was testimony that there were additional payments which, according to Husband, amounted to a total of $150,236 he owed to Mary. Mary testified that these payments were not intended as gifts and that her accountant was developing a repayment plan. Whether these payments were a bona fide loan was a question of fact, depending on the trial court's judgment as to the credibility of the witnesses. *See Panettiere*, 945 S.W.2d at 543. Based upon the record before us, the trial court's determination that there was a bona fide debt of $150,236 owed to Mary was supported by the evidence.

▪ Wife also contends that it was error for the trial court to use this debt in dividing the marital estate. Section 452.330 [3] does not define what constitutes marital debt. However, courts have applied the same principles that govern the classification of property to the classification of debt, and as a result all debt incurred by the parties after the commencement of the marriage is generally considered marital debt. *Rawlings v. Rawlings*, 36 S.W.3d 795, 798 (Mo.App. W.D.2001); *see also Wright v. Wright*, 1 S.W.3d 52, 60 (Mo.App. W.D.1999). Section 452.330.1 requires that "marital debts be divided along the same principles as marital property is divided." [4] *Petties*, 129 S.W.3d at 911. A trial court has broad discretion to determine how debt acquired during a marriage is to be allocated. *Schlotman v. Schlotman*, 126 S.W.3d 425, 430 (Mo.App. W.D.2004) Ab-

sent a clear showing of an abuse of discretion we will not alter the trial court's division. *Id.*

"If reasonable persons can differ about the propriety of the trial court's action, it cannot be said that the trial court abused its discretion." *Wright*, 1 S.W.3d at 57 (quoting *In re Marriage of Collins*, 875 S.W.2d 643, 647 (Mo.App. S.D.1994)). According to the record Mary furnished all of the $150,236 payments to Husband prior to the trial and the dissolution decree. There was also evidence that Husband used these funds to support their son, pay the family's bills and satisfy the obligations of his businesses between the time that Wife moved out and the dissolution judgment was entered. Furthermore, the trial court heard testimony that the need for the loan from Mary was precipitated, in part, by Wife's failure to contribute funds to pay family expenses. Although, the trial court's finding that there was a bona fide loan attributable to the marriage was supported by the evidence, we are unable to determine if its decision to assign it to Husband in the trial court's division of the marital estate was erroneous. This is because, as will be seen in our discussion of Point IV, we are unable to determine how the trial court classified some of the property dealt with in the judgment. *See Oetterer v. Oetterer*, 60 S.W.3d 48, 52 (Mo.App. E.D.2001) (holding that specific findings as to the classification of property are necessary to determine whether a division of property and debt is fair and equitable). The portion of the point concerning whether there was a debt to Mary attributable to the marriage is denied. We do not decide that

---

**3.** All statutory references are to RSMo (2000) unless otherwise indicated.

**4.** Wife argues that it is not mandatory for trial courts to distribute marital debt in the same manner as marital property, citing *Golleher v. Golleher*, 697 S.W.2d 547, 549 (Mo.App. E.D. 1985). That case preceded a 1998 amend-

ment to Section 452.330.1 mandating that courts divide both marital property and marital debts "in such proportions as the court deems just after considering all the relevant factors," including those specifically identified therein. *See Petties*, 129 S.W.3d at 911.

portion of the point relating to whether the debt was appropriately used to equalize the property division because of our conclusion concerning Wife's Point IV.

■ In Point III, Wife contends that the trial court erred in denying Count II of her amended petition for dissolution, which alleged that the marital estate had been depleted by a fraudulent conveyance of marital property to Mary. This is a factual determination and we defer to the trial court's findings because it is in a better position to judge the credibility of the witnesses. *See Taylor v. Clark*, 140 S.W.3d 242, 251 (Mo.App. S.D.2004).

Wife claims that she never signed the warranty deed conveying the real estate at issue to Mary, and she so testified. She relied on expert testimony to show that her name, as it appeared on the deed, was not in her handwriting. However, during oral argument on Wife's motion for a new trial, the trial court stated clearly that it did not believe her expert's testimony. Husband identified Wife's signature on the deed and testified that he was present when she signed it. In addition, Sheila Easton, a supervisor at Neosho Savings and Loan, testified that she witnessed both Husband and Wife sign the deed which she notarized on March 28, 2001. Therefore, we defer to the trial court's finding that Wife signed the warranty deed in question. Wife's Point III is denied.

■ In Point IV, Wife contends that the trial court erroneously failed to designate whether some property distributed by the court was marital or nonmarital. Because we are unable to determine whether the court classified certain items of property as marital or nonmarital, we must reverse the portion of the judgment dividing the property and remand for further proceedings.

■ The trial court must set aside the nonmarital property of the parties and divide the marital assets based upon all the relevant factors as provided in Section 452.330. *In re Marriage of Kirkham*, 935 S.W.2d 392, 393 (Mo.App. S.D.1996). In order for us to provide meaningful appellate review of the trial court's division of marital property, we must be able to ascertain which assets the court considered to be part of the marital estate. *See MacBeth v. MacBeth*, 622 S.W.2d 720, 723 (Mo.App. E.D.1981). "Specific findings on whether assets are marital or separate property are a 'necessary antecedent of a subsequent just division of marital property.'" *Oetterer*, 60 S.W.3d at 52 (quoting *In re Marriage of Below*, 8 S.W.3d 233, 235 (Mo.App. E.D.1999)).

In this case, the trial court categorized some items as nonmarital. Husband argues that because the trial court expressly found some property to be nonmarital, we should infer that all other property not so categorized was deemed marital property. *See Bishop v. Bishop*, 658 S.W.2d 512, 515 (Mo.App. E.D.1983). This dissolution decree does not lend itself to that interpretation because the trial court categorized one of the remaining items of property as marital but made no designation as to the rest.

The trial court listed all of the household furnishings and personal possessions as marital or nonmarital. The trial court did list five items of real estate as nonmarital, but characterized one of the remaining parcels of real estate as marital. With regard to the remaining parcels of real estate however, the trial court disposed of them by simply naming the party to whom the item would pass without indicating whether it was awarded through the division of the marital estate or whether the party was retaining it as nonmarital prop-

erty.[5] Based upon this inconsistency in the judgment, we cannot infer that all property not described as nonmarital was determined to be marital property by the trial court.

Section 452.330 directs courts to set aside nonmarital property and divide marital property. This statute has been interpreted to mandate findings by the trial court as to what property was considered nonmarital and what property was considered marital. *Oetterer*, 60 S.W.3d at 52. The trial court did not completely do so in this case. This failure leaves us unable to decide Wife's claim that the allocation of the marital estate was unjust. As a result, we are constrained to grant Wife's Point IV. Accordingly, the portion of the judgment relating to the division of property, including the debt to Mary, is reversed and the case is remanded for further proceedings consistent with this opinion.

PREWITT and RAHMEYER, JJ., concur.

**5.** Six items of real estate were awarded without the court describing whether they were marital or non-marital. Furthermore, none of the automobiles, investment accounts, businesses, individual stock holdings or promissory notes were described as marital or nonmarital.