In re the Marriage of Barbara J. WILK, Respondent,

v.

Keith WILK, Appellant.

No. 55498.

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 5, 1989.

Charles R. Schroeder, St. Peters, for respondent.

Roussin and Roach, Susan K. Roach, Chesterfield, for appellant.

SIMON, Chief Judge.

Husband, Keith Wilk, appeals from a decree of dissolution of marriage dividing the marital property and awarding primary custody of the parties' minor children to wife, Barbara Wilk. The parties were married on August 30, 1981, and separated on or about May 5, 1987. Three children were born of the marriage: Jonathon, January 17, 1982; David, November 30, 1982; and Sarah, May 29, 1984.

On appeal the husband contends that the trial court erred in: (1) awarding primary custody of the minor children to wife; (2) awarding the amount of child support; (3) dividing the marital property fifty-five percent (55%) to the wife and forty-five percent (45%) to the husband involving the marital home, the wife's retirement plan with Contel, the credit union balance of $3,149.60, the shares of stock valued at $10,461.61, the Home Federal Savings account of $3,000.00, the husband's workers' compensation claim, and the marital debt of the parties; (4) its division and determination of the value of the wife's retirement plan; (5) awarding a disproportionate share of his workers' compensation claim to the wife and failing to designate whether said claim was a marital or non-marital asset before the division; (6) not entering an order of any kind with regard to husband's contempt motion; (7) failing to enter an order of any nature with regard to the issue of Social Security Disability payments payable to the minor children; (8) denying husband's claim for attorney's fees against wife; and (9) ordering that the wife not be required to pay maintenance to the husband. We affirm in part and reverse and remand in part for further consideration in accordance with this opinion.

Our review is in accordance with the well established standard set forth in *Murphy v. Carron,* 536 S.W.2d 30[1–2] (Mo. banc 1976). We shall affirm the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares or applies the law. *Id.* at 32[1–2]. Further, "[a]s trier of fact, it is the function, indeed the duty, of the trial court to decide the weight and value to be given to the testimony of any witness. On appeal, we view the evidence in a manner favorable to the decree and disregard contradictory evidence." *Wynn v. Wynn,* 738 S.W.2d 915, 918[1] (Mo.App.1987) (citation omitted). "We defer to the trial court even if the evidence could support a different conclusion." *Id.*

The evidence, viewed in the light most favorable to the decree, reveals the following: At the time of the hearing, the children had been and were residing with the wife. The wife works at Contel as a staff supervisor earning $19.25 per hour and has worked there for approximately seventeen years. She is not seeking maintenance from husband. Additionally, she receives Social Security benefits based upon husband's disability for the three children of $260.00 per month. Wife is presently the owner of a home which she owned prior to the marriage. She had not placed the husband's name on the title. Wife testified that it was her opinion that the fair market value of the home was approximately sixty to sixty-two thousand dollars. During the course of their marriage, improvements were made to the house, and these improvements were paid from a joint checking account of the parties. Wife owns fifty shares of stock, having a fair market value of $27.00 per share, in Contel which were in her name and husband's name.

Husband was involved in an auto accident while working for Getz Exterminators and quit work six months later because he had sustained injury to his back. As a result of the accident, the husband had received a $16,000.00 personal injury settlement which was placed in a joint checking account of the parties. The wife testified that the money received was used to pay bills and that $4,000.00 was given to the husband's mother. The husband maintains that $6,000.00 of the $16,000.00 went into the children's accounts, with only the wife's name and the child's name on the account, and the rest was placed in the wife's own personal account. Husband further stated that he did not have any knowledge as to where the money had gone and his medical bills for his injury still remained unpaid.

It was further established that prior to the accident, husband was earning approximately between fifteen and twenty thousand dollars per year. Husband did not work for approximately one year following the accident. Husband receives Social Security Disability benefits of $660.00 per month. During the course of the proceedings, a contested issue was whether the husband worked for his mother's company, A.B.C. Specialty Foods. Wife argued that the husband had worked for his mother's company, while the husband denied that he had and testified that he would go into his mother's establishment to socialize with the employees and help out with minor tasks that were considered to be of a less strenuous nature. Husband testified that he was not paid by A.B.C. Specialty Foods for any alleged work. Wife testified that in the spring of 1985, husband had started to work at his mother's business, leaving home between seven and eight o'clock in the morning and returning home between six and seven o'clock in the evening. Wife further testified that she had on occasion observed the husband working at A.B.C. Specialty Foods and that the husband was compensated for his employment by a check made out in the wife's name for $250.00 per week. When the parties had separated, the wife no longer received checks from A.B.C. Specialty Foods. Wife produced three witnesses to establish that the husband was employable and employed at A.B.C. Specialty Foods. Two of the witnesses had testified that they had observed the husband pulling orders, loading and unloading trucks, but stated that they had never actually seen the husband receive a check as compensation for the time

spent at A.B.C. Specialty Foods. One of the witnesses, Ida Wilk, owner of A.B.C. Specialty Foods and husband's mother, testified that her son does not own any stock in the company and that the checks that the wife referred to were compensation for consulting and office work that the wife had performed for the company. Ida Wilk testified that her late husband had been the one who was involved with the writing of the checks to the wife and that she decided not to disturb his procedure when he passed away. Wife maintains that the only service that she performed for A.B.C. Specialty Foods was the preparation of a personnel program which took her approximately thirty minutes to prepare. She stated that this was the only time that she had done work for the company and yet she continued to receive weekly paychecks.

There were no allegations of infidelity by either party. However, the wife did testify that during the marriage, husband had struck her on four occasions. The husband testified that he had hit his wife once with an open hand, "more of a slap," and that his wife had sustained no injury as a result of the hit. The last incident of marital misconduct occurred when the wife was in the hospital and the two had gotten into an oral disagreement. Husband had hit her in the mouth with his fist, splitting her lip and loosening two of her teeth. Husband testified that he had no recollection of personally striking his wife due to the effects of the medication that he was taking at the time. The husband did testify that his mother recounted to him that he had struck his wife but had caused no injury to her. Husband further testified that other than the two occasions that he knows of, he was not physically abusive to his wife during their marriage.

Wife maintains that after their separation, husband had arranged, without first informing her, to have the utilities turned off while she and the children were residing in the house.

Husband asserts that despite his health problems he has no difficulty in caring for the children and asserted that he would like to have actual physical custody of the minor children. He regards himself as taking an active interest in his children's welfare and would like to have joint legal custody so that he can continue to have some input into their lives. Husband testified that there had been problems on numerous occasions regarding his temporary custody and visitation rights with the children. Wife testified that the doctor had advised her that the children should not be taken to the father because the father smokes and one child is asthmatic.

Pursuant to the trial court's decree, the wife was granted the primary care, custody, and control of the minor children with temporary custody granted to the husband. The husband was ordered to pay to the wife the sum of $23.00 per week per child as and for child support. The trial court found the home to be marital property, and valued it at $50,000.00 at the time of the marriage and $62,000.00 at present value, an increase in value of $12,000.00. The increase in value was divided on the basis of fifty-five percent (55%) to the wife and forty-five percent (45%), i.e. $5400.00 to the husband on the basis of finding of fault on the part of the husband. The wife was granted the marital home, save the $5,400.00 interest to the husband, was ordered to be responsible for any indebtedness on the marital home, and was to hold the husband harmless thereon. The husband was granted forty-five percent (45%) of the wife's retirement plan and forty-five percent (45%) of the credit union balance of $3,149.60. The shares of stock having a value of $10,461.61 were also divided under the same formula, as was the joint savings account at Home Federal Savings of $3,000.00. The wife was granted fifty-five percent (55%) of the husband's workers' compensation claim and all debts during the course of the marriage were to be paid fifty-five percent (55%) by the husband and forty-five percent (45%) by the wife. The trial court further found that the payment of $250.00 per week to the wife was actually compensation for the services rendered to A.B.C. Speciality Foods by the husband. With regard to the $16,000.00 from the automobile accident which was deposited in a bank account, the trial court found that

$4,000.00 was paid to the husband's mother, $2,000.00 was placed in the minor children's savings account, and the balance was spent for marital bills and expenses and thereby made no further distribution thereof. The children's savings accounts were ordered to be placed in the joint names of the children and both husband and wife and to be withdrawn only upon court order. No maintenance was awarded to either party, and both sides were to pay their own attorneys' fees.

◼ In his first point, husband contends that the trial court erred in awarding custody of the minor children to wife, because that order is not supported by substantial evidence and constituted an abuse of the court's discretion. Husband argues that it would be in the children's best welfare to be in the joint custody of the parties, and that he is willing to engage in counseling and work towards a joint custody approach. Husband argues that, due to the absence of any evidence in the case suggesting the impropriety of joint custody, the trial court was using the award of custody as a punishment for what the trial court deemed to be marital misconduct on the part of husband.

Initially, we note that in the matter of determining child custody, the trial court is vested with broad discretion. *In re Marriage of Mihalovich*, 659 S.W.2d 798, 801[2–4] (Mo.App.1983). The trial judge has an advantage over a reviewing court, in that he is in a better position to consider all the facts in evidence bearing on custody, he can observe the participants before him, their conduct, demeanor and characteristics, and can best determine what is in the best interest of the children. *Id.*

◼ Husband's contention rests upon the fact that he was seeking an order from the trial court granting joint custody of the minor children, and nowhere in the transcript does the wife object to joint custody, nor does she address the subject whatsoever. An award of joint custody is authorized by § 452.375 RSMo 1986 (all references are to RSMo 1986 unless otherwise noted), if it is in the best interest of the children. "Joint legal custody" means that

the parents share the decision-making regarding the health, education, and the welfare of the child, and all the important events in the small child's life. § 452.375.1(1). "Joint physical custody" means that the child lives with each of the parents on an alternating basis. § 452.375.1(2). The trial court has the option to award either or both. § 452.375.3. There is no presumption in favor of joint custody; there is only an option. *S.R. v. S.M.R.*, 709 S.W.2d 910, 915[5] (Mo.App. 1986).

Although the husband testified that he loved his children, and expressed his desire to have joint custody of them, evidence adduced at trial indicated that the parties do not have "such commonality of beliefs," or that they can cooperate with each other, or that they can make shared decisions relating to the health, education, and welfare of the children. Throughout the record, the evidence shows that the parties failed to communicate and cooperate. For example, there have been problems on numerous occasions regarding husband's failure to exercise his visitation with the children, the parties do not agree as to the custody and visitation times, the parties attend different religious services, decisions about the medical attention afforded to one of the children were made by one party without consultation of the other, the water was cut off to the home when the children were residing at the house, and there is evidence that the wife was physically abused. "While the statute does not expressly require agreement of the parents as a prerequisite to an award of joint custody, the plan is not likely to be in the child's best interest if the parents can not agree to agree." *Brisco v. Brisco*, 713 S.W.2d 586, 589 (Mo.App.1986). While there is some evidence that the parties have a mutual concern for the proper medical attention, and that the parties share the belief that the children should have regular contact with each parent, there is no substantial evidence to support an award of joint legal custody. Thus, the trial court did not err in awarding custody of the three minor children to the wife.

In his second point, husband contends that the trial court abused its discretion in awarding child support in the amount of $23.00 per week per child. Husband argues that, absent an award of joint custody, the trial court did not properly consider his financial condition, and that the award was not supported by sufficient evidence.

Initially, we note that the trial court has considerable discretion in awarding child support. Such an award shall not be disturbed unless the evidence is "palpably insufficient" to support it, and an appellate court will not substitute its judgment for that of the trial court absent a manifest abuse of discretion. *Hogrebe v. Hogrebe*, 727 S.W.2d 193, 195[1] (Mo.App.1987).

The evidence, viewed in the light most favorable to the decree, reveals the following. Wife and her three children currently reside in the home that belonged to her prior to her marriage to husband. Wife is a staff supervisor at Contel where she has worked for seventeen years. She averages forty hours per week and earns $19.25 per hour. She has no other source of income besides the two hundred and sixty some odd dollars she receives from Social Security for the children. Her income for the past several years has been approximately $35,000 in 1987 and approximately $40,000 in 1988.

Prior to the accident, husband was earning approximately between fifteen and twenty thousand dollars per year. Husband did not work for approximately one year following the accident, and it is alleged that he works for his mother's company, A.B.C. Specialty Foods and receives a weekly paycheck of $250.00. Husband maintains that he receives no income from A.B.C. Specialty Foods and his only source of income is from his Social Security Disability benefits.

Based on the evidence presented by the parties, the trial court believed the testimony of the wife and found that the $250.00 per week was in fact compensation for services rendered to A.B.C. Specialty Foods, Inc. by husband. Husband is also receiving a disability payment of $660.00 per month. Based on the foregoing, we conclude that there was substantial evidence to support the award of $23.00 per week per child. The trial court did not abuse its discretion.

In his third point, the husband contends that the trial court erred in dividing the marital assets fifty-five percent (55%) to the wife and forty-five percent (45%) to the husband. Husband argues that the trial court's division is not an equitable one, and that the trial court disproportionately took into account the alleged marital misconduct of the husband.

The trial court shall divide the marital property in such proportions as it deems just after considering all relevant factors. Section 452.330.1. A disparity in the value of marital property awarded to each spouse is justified if any of the relevant factors to be considered while dividing such property justifies an unequal distribution. *In Re Marriage of Dildy*, 737 S.W.2d 756, 760[2] (Mo.App.1987). Furthermore, § 452.330 provides the trial court with considerable discretion in dividing marital property, and an appellate court will interfere only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *Dardick v. Dardick*, 670 S.W.2d 865, 869[4–5] (Mo. banc 1984).

The evidence indicates that the wife was the sole owner of the house prior to the marriage and at no time did the wife include husband's name on the title to the house. The court found the testimony of the husband to be the value of the marital home, both at the time of marriage and at the time of separation, was so speculative and based upon unsubstantial hearsay as to be anything but reliable. The trial court found the value of the marital home to be $50,000.00 at the time of the marriage and $62,000.00 present value, an increase of value during the course of the marriage of $12,000.00. The trial court, therefore, correctly ordered husband to have an interest only in the increase in value of the home since the date of the marriage or $12,000.00.

■ In husband's fourth point, husband contends that the trial court abused its discretion in dividing the wife's retirement plan. It is not mandatory that pension benefits be divided between spouses, whether they are fixed or otherwise, where other assets are available. *Kuchta v. Kuchta,* 636 S.W.2d 663, 666[1] (Mo. banc 1982). The trial court is given broad discretion to design "some plan" protecting the rights, and hopefully the best interests, of the parties. *Id.* at 666[1]. The trial court had sufficient information to consider the pension benefits as marital property, and its division was proportionally just.

■ The same holds true in regards to the credit union balance of $3,149.60, the shares of stock valued at $10,461.61, the Home Federal Savings account of $3,000.00, and the marital debt of the parties. Further, in dividing the marital property, the trial court may take into account the conduct of the parties during the marriage. § 452.330. There was evidence that the husband physically abused the wife on four separate occasions, and husband had the utilities turned off at the home. Therefore, no abuse of discretion appears.

■ In his fifth point, husband contends that the trial court abused its discretion in awarding a disproportionate share of his workers' compensation claim to the wife, and failing to designate whether said claim was a marital or non-marital asset before the division. Husband argues that the trial court's division, which entitles wife to fifty-five percent (55%) of the husband's workers' compensation settlement, was based on the erroneous presumption that the workers' compensation claim was marital property subject to equitable distribution. In *Pauley v. Pauley,* 771 S.W.2d 105, 109[1] (Mo.App.1989), we stated that:

> [T]he lump sum awards to husband of workers' compensation benefits ... are non-marital assets to be set aside to husband as his separate property to the extent these awards compensate husband for future loss of earnings that have accrued since the dissolution of the parties' marriage. *Id.* at 109[1].

Here, the record does not provide us with any information regarding whether husband's workers' compensation claim compensates for loss of earnings during the marriage or compensates for loss of earnings which accrued since the dissolution of the marriage. If the claim reflects compensation for the former, it is regarded as marital property. If the claim reflects compensation for the latter, it is regarded as non-marital property. Normally, workers' compensation claims represent future lost wages and earning capacity, but the record before us fails to disclose the information essential to computing the portion of the husband's award, if any, allocable as marital property. Thus, we must remand the cause to the trial court for additional fact finding and division of all property, marital and non-marital, consistent with these principles. *Queen v. Queen,* 308 Md. 574, 521 A.2d 320, 327[1–3] (1987).

■ In his sixth point, husband contends that the trial court abused its discretion in not entering an order of any kind regarding his motion for contempt. The record does not reflect a ruling on husband's application to cite and punish wife for contempt. A hearing was conducted, but no final order was entered by the trial court. The husband has the duty to bring his motion for contempt to the trial court's attention. The failure to do so inevitably results in the fact that we are unable to rule on that on which the trial court did not rule.

■ In his seventh point, husband contends that the trial court abused its discretion in failing to enter an order regarding the Social Security Disability payments payable to the minor children. Such disability benefits are the property of neither the husband nor the wife and are not part of the marital estate. 42 U.S.C. § 402 et seq. (1989). While not marital property, the children's benefits should be considered in the determination of support payments. Here, evidence of these benefits was before the trial court, and there is nothing to indicate that the trial court failed to consider these benefits. Thus, there was no abuse of discretion.

**224**

In his eighth point, husband contends that the trial court abused its discretion in denying husband's claim for attorney's fees. Husband argues that the trial court neither considered the disparity in income that existed between the husband and the wife, nor the financial need of the husband in allocating costs and attorney fees in the dissolution. Husband argues that due to his work related injury, he has been permanently and totally disabled, unable to compete in the open labor market, and therefore unable to generate income that would enable him to pay his attorney fees.

Initially, we note that the trial court has considerable discretion in awarding attorney's fees. *Trapani v. Trapani*, 686 S.W.2d 877, 878[1–4] (Mo.App.1985). Courts themselves are deemed experts on the question of attorney's fees. *Hahn v. Hahn*, 569 S.W.2d 775, 778[7] (Mo.App. 1978). In light of the record indicating the resources of the husband, we conclude that the trial court did not abuse its discretion in not requiring that wife pay husband's attorney's fees.

In his final point, husband contends that the trial court abused its discretion in ordering that wife not be required to pay maintenance to husband when he has been rendered disabled as a result of his work place injury and is unemployed, and wife was employed and possessed sufficient assets to support herself.

Section 452.335 provides that before a trial court awards maintenance it must find that the spouse seeking maintenance, lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

The trial court has wide discretion in awarding maintenance and such an award will not be disturbed on appeal, absent an abuse of that discretion. *Schreier v. Schreier*, 625 S.W.2d 644, 650[6] (Mo. App.1981); *Mills v. Mills*, 663 S.W.2d 369, 374[10] (Mo.App.1983). It is the husband's burden on appeal to demonstrate an abuse of that discretion. *Bull v. Bull*, 634 S.W.2d 228, 229[5] (Mo.App.1982). Here, the record reveals that husband has performed services for his mother's business, A.B.C. Specialty Foods, Inc., earning the sum of $250.00 per week. Husband also receives a disability payment of $660.00 per month. In determining future employability of a party, the trial court in a dissolution action is not restricted to a consideration of present earnings and can consider prior earning capacity and probable future prospects. *Salcedo v. Salcedo*, 693 S.W.2d 875, 878[3] (1985). The record establishes that the trial court properly considered the factors set forth in § 452.335, and the denial of maintenance from wife to husband was not an abuse of that discretion.

Finally, we note that wife filed a motion for damages for frivolous appeal pursuant to Rule 84.19. Husband filed a motion to dismiss wife's motion. Finding meritorious issues in this appeal, wife's motion is denied.

Judgment affirmed in part, and reversed and remanded in part for further consideration in accordance with this opinion.

DOWD and HAMILTON, JJ., concur.