**Jannie M. SEYLER,**
**Petitioner/Respondent/Cross–Appellant,**

v.

**John Eugene SEYLER,**
**Respondent/Appellant/Cross–Respondent.**

**No. ED 86912.**

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 12, 2006.

---

1. All statutory references are to RSMo.2004 unless otherwise indicated.

58

Keffe & Brodie, Maia Brodie, Robin L. Kaiser, co-counsel, St. Louis, MO, Ariane K. Moore, co-counsel, Kirkwood, MO, for appellant.

Gary M. Siegel, Siegel Sevastianos, LLP, R. Bradley Griffin, co-counsel, St. Louis, MO, for respondent/cross-appellant.

Before CLIFFORD H. AHRENS, P.J., and MARY K. HOFF, J., and NANNETTE A. BAKER, J.

## OPINION

PER CURIAM.

John Eugene Seyler (Husband) appeals and Jannie M. Seyler (Wife) cross-appeals

from an amended trial court judgment entered in their dissolution of marriage action. Husband alleges trial court error in its classification of certain pending workers' compensation claims as solely marital property. Wife alleges trial court error in: its determination of child custody by sustaining Husband's objection to Wife's discovery request for Husband's prior mental health records based upon the physician-patient privilege; in ordering the parties' minor child to attend a Catholic school, if the parties could not agree on the choice of school, and in ordering Wife to pay fifty percent of the cost for the child to attend the Catholic school; and in denying Wife's motion to reopen or amend the amended judgment. We affirm in part, reverse in part, and reverse and remand in part.

### Factual and Procedural Background

The parties were married in October 1990. One child (Child) was born of the marriage in July 1992. In December 2003, Wife filed a Petition for Dissolution of Marriage, to which Husband filed a Counter–Petition for Dissolution of Marriage. Wife filed her petition after Husband's younger brother accused Husband of sexually abusing him when he was a child, about thirty years ago. In her petition, Wife sought primary physical and legal custody of Child.

Also in December 2003, Wife obtained an Ex Parte Order of Child Protection (Order of Protection), which remained in effect for forty-two days. While the Order of Protection was in effect, Husband could not be at the family residence or at Child's school. Pursuant to the Order of Protection, the trial court appointed a guardian ad litem (GAL) for Child. In January 2004, Wife took Child to meet with Kolleen Simons (Simons), a licensed clinical social worker, because Wife was concerned Husband was possibly abusing Child.[1]

In March 2004, the trial court entered a pendente lite order (PDL) awarding the parties joint legal and joint physical custody of Child, which included unsupervised, overnight custody periods for Husband, and ordering Husband to pay to Wife $200 per month for child support. The court also entered an order by consent under Rule 60.01[2] directing the parties and Child to undergo psychological evaluations by Dr. Dean Rosen (Dr. Rosen). Subsequently, the court entered a protective order restricting the production of Dr. Rosen's medical records.

During discovery, Wife requested Husband to produce properly executed medical authorizations "for each and every hospital, doctor, psychiatric center, treatment center or health care provider of any shape, matter, or form from whom [Husband has] received care, counseling and/or treatment with regard to any type of mental, nervous and/or emotional illness, problem, or disorder, or for drug abuse, illness, or addiction." Husband objected to the release of this information on the basis of physician-patient privilege. The trial court sustained Husband's objection. The trial court also declined to order Husband to produce the requested documents under Rule 60.01. Subsequently, Wife amended her Petition for Dissolution of Marriage to seek sole physical and legal custody of Child with Husband to have only supervised visitation. The amended petition alleged, among other things: Husband was and had been abusive, physically, emotionally and mentally; Husband engaged in

---

1. Simons ceased meeting with Child in March 2005 because Child was doing well, needed no further therapy at that time, and was a "good kid."

2. All rule references are to Mo. R. Civ. P.2004, unless otherwise indicated.

inappropriate conduct with Child, including taking recent showers with Child; and Husband had a history of substance abuse, violence, and sexually inappropriate conduct.

In March 2005, the trial court held a dissolution hearing and subsequently entered a judgment dissolving the parties' marriage. Both parties filed motions to amend the judgment, and the trial court entered an amended judgment in September 2005.[3] In the amended judgment, the trial court classified as marital property a pending workers' compensation claim that Husband had against Energy Petroleum for which he received temporary total disability payments during the parties' marriage and anticipated receiving an additional lump sum payment after dissolution of the marriage. In determining the claim to be marital property, the court found that Husband introduced no evidence of the nature of the lump sum payment, including what amount, if any, would represent lost earnings. The court then awarded each party fifty percent of all sums received by Husband in connection with the claim.

In the amended judgment, the trial court awarded the parties joint legal and joint physical custody of Child, with Child residing primarily with Wife, and ordered Husband to pay to Wife $200 per month for child support. The court also stated that if the parties were unable to agree upon the high school that Child would

attend, then Child would attend St. John the Baptist Catholic School (the Catholic School).[4] The court ordered each parent to pay directly to the educational institution fifty percent of the cost for Child to attend a private or parochial high school.

Subsequently, Wife filed a motion to reopen or amend the amended judgment, which the trial court denied after a hearing.

Husband appeals and Wife cross-appeals from the amended judgment.

*Husband's Appeal*

In his sole point on appeal, Husband argues that the trial court abused its discretion by failing to set aside as separate property to Husband the portion of Husband's pending workers' compensation claims against Energy Petroleum attributable to future loss of earnings accrued after the dissolution of the parties' marriage.[5]

A trial court has broad discretion in identifying marital property. *N.M.O. v. D.P.O.*, 115 S.W.3d 854, 859 (Mo.App. E.D. 2003). If the evidence supports the trial court's classification, we will not find error in the trial court's decision. *Id.*

Section 452.330.1[6] provides in relevant part that "the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property . . . in such proportions as the court deems just after considering all relevant fac-

---

3. The trial court also entered a nunc pro tunc judgment in November 2005.

4. At the time the trial court entered its amended judgment, Child was in the eighth grade at the Catholic School.

5. Although the language in the amended judgment refers to a singular pending workers' compensation claim against Energy Petroleum, as Husband's point relied on indicates and the record supports, Husband had more

than one pending workers' compensation claim against Energy Petroleum at the time of trial. Therefore, we reasonably interpret the amended judgment as identifying and subsequently dividing all of Husband's pending workers' compensation claims against Energy Petroleum, as specified in this opinion.

6. All statutory references are to RSMo 2000, unless otherwise indicated.

tors...." A statutory presumption exists that all property acquired by either spouse subsequent to the marriage is marital property. Section 452.330.2.

 We follow the analytical approach to classification of property, including whether or not a lump sum workers' compensation award is marital or nonmarital property. *Pauley v. Pauley,* 771 S.W.2d 105, 109 (Mo.App. E.D.1989). Under the analytical approach, we do not depend on a formalistic view that looks only to the timing of the acquisition of the award; instead, the inquiry focuses on the elements of damages the particular award was intended to remedy, the purpose of the award. *Id.* In other words, we focus on what the award was designed to replace. *Heslop v. Heslop,* 967 S.W.2d 249, 254 (Mo.App. W.D.1998). Compensation is marital to the extent that it compensates for loss of earnings during the marriage; compensation is nonmarital to be set aside as separate property to the extent that it compensates for future loss of earnings that have accrued since the dissolution of a marriage. *Winslow v. Winslow,* 14 S.W.3d 690, 695 (Mo.App. E.D.2000).

Regarding Husband's workers' compensation claims against Energy Petroleum, the record reveals the following. Energy Petroleum employed Husband from 1996 to 2003. Husband had four intertwined workers' compensation claims against Energy Petroleum for injuries occurring in 1997 and 1998.[7] Initially, Husband testified that all of these claims were pending at the time of trial. Subsequently, Husband testified that the claim stemming from the 1997 injury had been settled six years prior, and he had been paid on that settlement and did not expect any more money from that claim. Husband also had

a fifth workers' compensation claim against Energy Petroleum for injuries occurring in 2002.[8] During the period of time that Husband was unable to work due to his injuries, he received monthly payments from workers' compensation. Husband did not offer into evidence any of the actual workers' compensation claim forms to indicate the nature of the claims. Husband testified that he could not provide any explanation or documentation to support his allegation that the workers' compensation claims were separate property. Husband testified that he filed the claims because he injured his back at work, and, based on the injuries, workers' compensation would compensate him. Husband was not aware of anything else for which he would be compensated on the claims.

 The pending workers' compensation claims are nonmarital property to be set aside to Husband as his separate property to the extent the claims compensate Husband for future loss of earnings after the dissolution of the parties' marriage. The record does not establish what percentage, if any, of Husband's pending workers' compensation claims will compensate him for loss of earnings during the marriage versus future loss of earnings after the dissolution of the parties' marriage. If the claims reflect compensation for the former, they are considered marital property. *See Wilk v. Wilk,* 781 S.W.2d 217, 223 (Mo.App. E.D.1989). If the claims reflect compensation for the latter, they are considered nonmarital property. *See Id.*

 Because the record fails to disclose the information necessary for computing what portions of Husband's pending workers' compensation claims against Energy Petroleum are nonmarital property and

---

**7.** Injury Numbers 97–476032, 98–178370, 98–178371, and 98–178372.

**8.** Injury Number 02–123150.

what portions are marital property subject to equitable distribution, we reverse the amended judgment and remand the case to the trial court for additional proceedings to make such a determination. *See Winslow,* 14 S.W.3d at 695. The court may receive additional evidence to consider in its determination. We note, however, that Husband must prove by clear and convincing evidence what portion, if any, of the claims would compensate Husband for future loss of earnings after the dissolution of the parties' marriage. *See Petties v. Petties,* 129 S.W.3d 901, 908 (Mo.App. W.D.2004). Point granted.

### Wife's Cross–Appeal

Wife raises three points on cross-appeal. In her first point, Wife argues that the trial court erred in its determination of child custody by sustaining Husband's objection to Wife's discovery request for Husband's prior mental health records based upon the physician-patient privilege because abuse of Child was suspected and Husband waived the physician-patient privilege.

■ We will affirm the trial court's custody determination unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Reisinger v. Reisinger,* 125 S.W.3d 879, 883 (Mo.App. E.D.2004).

■ Section 452.375.2 requires the trial court to determine custody in accordance with the best interests of the child. In doing so, one factor the court must consider is the mental and physical health of all individuals involved, including any history of abuse of any individuals involved. Section 452.375.2(6). Section 210.140 is a tool provided by the legislature to assist the trial court in making a sound and prudent judgment in its duty to ascertain the best interests of the child in situations involving known or suspected child abuse or neglect. *See Roth v. Roth,* 793 S.W.2d 590, 592 (Mo.App. E.D.1990). Section 210.140 provides in relevant part:

> Any legally recognized privileged communication, except that between attorney and client or involving communications made to a minister or clergyperson, shall not apply to situations involving known or suspected child abuse or neglect and shall not constitute grounds ... to give or accept evidence in any judicial proceedings relating to child abuse or neglect.

Section 210.140 vitiates the physician-patient privilege established in Section 491.060(5). Section 210.140 prevents a party from invoking the physician-patient privilege in any custody proceedings involving known or suspected child abuse or neglect. *Roth,* 793 S.W.2d at 592.[9] For evidence normally subject to the physician-patient privilege to be admissible, there must be an allegation or evidence of known or suspected child abuse or neglect. *See Pilger v. Pilger,* 972 S.W.2d 628, 632 (Mo. App. S.D.1998).

■ At trial, Husband testified that he showered with Child until Child was nine or ten years old, when Child started to reach puberty, and that he occasionally still sleeps with Child. Wife testified that

---

9. In dissolution of marriage cases, Missouri courts have utilized the following definition of abuse:

> any physical injury, sexual abuse, or emotional abuse inflicted on a child other than by accidental means by those responsible for the child's care, custody, and control, except that discipline including spanking, administered in a reasonable manner, shall not be construed to be abuse.

Section 210.110(1); *Pilger v. Pilger,* 972 S.W.2d 628, 632 (Mo.App. S.D.1998).

Husband walked around the house naked, used slang words for male genitalia in front of Child, and told Child "how well hung he was." Wife also testified that on a few occasions, when Child was about seven years old, Child told Wife that Husband touched Child's "winkie." Wife further testified that, during the period in which the Order of Protection was in effect, Wife told Child that Husband had been doing things that were inappropriate and not right and if Child wanted to tell her anything, to not be ashamed, to which Child looked at Wife, cried, and told her that "something happened." Wife also testified that Husband ridiculed her body after she gave birth to Child and in Child's presence. Testimony by both parties also suggested that both parties indulged in excessive alcohol consumption during the marriage as well as made verbal accusations toward each other in Child's presence.

This record is sufficient to trigger the application of Section 210.140. *See Pilger,* 972 S.W.2d at 632 (demeaning and unsubstantiated remarks about one parent made by the other parent to the children as well as evidence concerning the parent's taking the children to another state during a period of visitation and failing to return them as agreed was sufficient evidence of child abuse or suspected child abuse to trigger application of Section 210.140); *Roth,* 793 S.W.2d at 592–593 (evidence of parents poisoning the minds of their children regarding the other parent and permitting the children's abuse of alcohol as well as their own was sufficient evidence of child

neglect to trigger application of Section 210.140).

Therefore, the trial court erred in sustaining Husband's objection to Wife's discovery request for Husband's prior mental health records based upon the physician-patient privilege.[10] Accordingly, we reverse the amended judgment and remand the case to the trial court for additional proceedings for the trial court to have at its disposal all available pertinent evidence in determining child custody. *See Roth,* 793 S.W.2d at 592.[11] Point granted.

In her second point on cross-appeal, Wife argues that the trial court erred in ordering Child to attend the Catholic School, if the parties could not agree on the choice of school, and in ordering Wife to pay fifty percent of the cost for Child to attend the Catholic School because the orders were not supported by the evidence and violated the separation of church and state.

▮▮▮▮ The test for determining when a court should order private or parochial schooling for a child over the wishes of one parent is when such schooling will meet the particular educational needs of the child. *Drury v. Racer,* 17 S.W.3d 608, 610 (Mo.App. E.D.2000). Similarly, to compel a parent to pay for private or parochial schooling for a child, it must be shown that such schooling will meet the particular educational needs of the child. *Id.* at 611.

Regarding Child's education, the record reveals the following. Child attended the Catholic School since pre-school, and, at

**10.** In light of this conclusion, we need not address Wife's argument that Husband waived the physician-patient privilege by consenting to a mental examination and obtaining the report of Dr. Rosen under Rule 60.01.

**11.** We note that although the broad language of Section 210.140 indicates the physician-patient privilege shall not be applicable or

constitute grounds to bar the giving or accepting of evidence in any judicial proceeding relating to child abuse or neglect, *see State ex rel. D.M. v. Hoester,* 681 S.W.2d 449, 451–452 (Mo. banc 1984), we do not find any prohibition for refusing or rejecting evidence on other applicable grounds.

the time of trial, Child was in the seventh grade. The Catholic School is located about one and a half blocks from Husband's residence and about one mile from Wife's employer. Husband had no plans to move from his residence. Wife indicated a desire to move from her current residence into a "good school district," but she did not have any definite plans or time frame. The elementary division of the Catholic School goes through the eighth grade. Husband had no first-hand knowledge or information concerning the high school division of the Catholic School. Husband's parents paid Child's tuition, including books, at the Catholic School during the parties' marriage. Husband testified that he paid Child's tuition for the seventh grade and that he was willing to accept the obligation to pay Child's tuition. Husband also testified he wanted Child to continue at the Catholic School. Wife testified she wanted Child to continue at the Catholic School through the eighth grade because he had been there since he started school, but, at the end of the eighth grade, Wife wanted Child to attend elsewhere. Wife testified that a public school would have more academics and sports to offer Child. Mother testified that, at the time of trial, she had not decided whether Child should attend a public high school or the Catholic School, but she hoped that the parties could make a mutually agreeable decision about the issue when the time came. Dr. Rosen concluded that Child liked the Catholic School and that it would be in Child's best interest to continue at the Catholic School, if possible. The GAL testified that changing Child's school would not be in Child's best interest. Child has been diagnosed with ADHD, although Husband disagreed with the diagnosis. Child lacked self-control at school

and had received a D in conduct, but otherwise the parties were pleased with his academics at the Catholic School.

 Based on this evidence, we conclude that Husband failed to prove that attendance at the Catholic School will meet any particular educational needs of Child. Although there may be cases where continuation of private or parochial schooling, from elementary to high school, meets an educational need of a child, *Schmidt v. Schmidt*, 949 S.W.2d 117, 121 (Mo.App. E.D.1997), Husband presented no evidence that attendance at the high school division of the Catholic School met an educational need of Child based on Child's attendance at the elementary division. Therefore, the trial court erred in ordering Child to attend the Catholic School, if the parties could not agree on the choice of school, and in ordering Wife to pay fifty percent of the cost for Child to attend the Catholic School.[12]

Accordingly, we reverse the amended judgment as to those portions ordering Child to attend the Catholic School, if the parties could not agree on the choice of school, and ordering Wife to pay fifty percent of the cost for Child to attend the Catholic School. Point granted.

In her third point on cross-appeal, Wife argues that the trial court abused its discretion in denying her motion to reopen or amend the amended judgment because Wife learned after trial that Husband violated the trial court's discovery orders by failing to disclose his receipt of a workers' compensation settlement and benefits and by failing to disclose the existence of at least one pending workers' compensation claim.

---

12. In light of this conclusion, we need not address Wife's argument that the orders vio-

late the separation of church and state.

Rule 75.01 allows the trial court, for good cause shown, to vacate, reopen, correct, amend, or modify its judgment within a specified time period. The trial court has considerable discretion in ruling on Rule 75.01 motions, and we will not reverse its decision unless it abuses that discretion. *In re Marriage of Bennett,* 938 S.W.2d 952, 957 (Mo.App. S.D.1997).

During the post-trial motions hearing, Husband testified that in March 2004, in settlement of the 1997 injury, he received about $23,000, of which he netted about $16,000, which he deposited into a Bank of America savings account. Husband also testified that he received about $1,710 in workers' compensation temporary partial disability benefits in the summer of 2004 for an injury he suffered at his present employer in July 2004. Husband stated that he had not filed a workers' compensation claim and did not intend to file a claim for additional benefits. Rather, Husband's employer filed a claim with its insurance company to pay Husband's salary for July 2004 while he was not working.

Wife had the opportunity to cross-examine Husband at trial about any workers' compensation settlement he received for the 1997 injury. Further, in Husband's second supplemental answers to Wife's interrogatories, filed in September 2004, Husband answered affirmatively to the question of whether, from the date of marriage, Husband had any pending claims or lawsuits or had settled any claim or lawsuit of any kind. Husband then identified a wrongful termination lawsuit as well as the workers' compensation claim against Energy Petroleum and stated $16,000 as the amount of the claims or the settlement received. In Husband's third supplemental answers to Wife's interrogatories, filed

March 2005, Husband stated the amount of the settlement, including the net amount received, in the wrongful termination lawsuit against Energy Petroleum. As stated by the trial court during the post-trial motions hearing, the issue before the trial court was not whether Husband fully answered the interrogatory, but rather, whether Husband disclosed the asset, namely, the settlement he received for the 1997 injury.[13] The trial court concluded that Husband had disclosed the asset and, therefore, the asset had been divided in the amended judgment. We cannot conclude that this determination was an abuse of discretion. Similarly, Husband's testimony indicates that he did not file a claim for the July 2004 injury, so no failure to disclose could have occurred. Finally, Wife refers to an alleged workers' compensation claim pending in Illinois. The only reference in the record to this alleged claim is a brief statement by Wife's counsel at the post-trial motions hearing: "There's also in this stack an Illinois—it indicates there was an Illinois worker's comp claim." Under these circumstances, the trial court did not abuse its discretion in denying Wife's motion to reopen or amend the amended judgment. Point denied.

### Conclusion

The amended judgment of the trial court is affirmed in part, reversed in part, and reversed and remanded in part for further proceedings consistent with this opinion.

---

**13.** We note that the trial court acknowledged that Husband did not fully answer the inter-

rogatory with all of the particulars.