In the Missouri Court of Appeals
 Eastern District
 DIVISION FOUR

KATHLEEN M. MCLAUGHLIN, ) ED109164
 )
 Respondent, ) Appeal from the Circuit Court of
 ) St. Louis County
v. ) 15SL-DR00117-01
 )
KEVIN P. MCLAUGHLIN, ) Honorable Bruce F. Hilton
 )
 Appellant. ) Filed: December 21, 2021

 Kevin P. McLaughlin (Father) appeals from the trial court’s judgment denying his motion

to modify child support but relieving him from his financial obligation to pay private school

tuition for his children and granting Kathleen M. McLaughlin (Mother) sole legal custody. We

affirm.

 BACKGROUND

 Father and Mother entered into a Judgment of Dissolution of Marriage by consent in the

St. Louis County Circuit Court on September 10, 2015 (Consent Judgment). Two children were

born of the marriage, who were respectively ten and seven years old at the time of the

modification trial. The Consent Judgment, inter alia, awarded Father and Mother joint physical

and legal custody of the children and increased Father’s visitation when the youngest child

turned seven. Father agreed to pay Mother child support in the amount of $2,000 per month;

however, the presumed amount pursuant to the Form 14 child support chart was $1,700 per
month for the two children, which included a 10 percent overnight custody credit on Line 11.

Each party was to bear one-half of the children’s private school expenses agreed upon in advance

by the parties, including tuition, books, fees, and uniforms. Father also agreed to pay Mother

maintenance in the sum of $2,000 per month through September 1, 2017, and $1,000 per month

through September 1, 2018.

 Nearly three years after the Consent Judgment was entered, Father filed his Motion to

Modify on August 1, 2018, seeking reduction of his child support obligation and sole legal

custody, or, in the alternative, a judgment that the children shall attend a school other than Oak

Hill Elementary School, even though he had agreed to this school pursuant to the Consent

Judgment when each child started kindergarten. Mother filed a cross-motion seeking to modify

physical and legal custody. Prior to trial, Father dismissed his request for sole legal custody of

the children and Mother dismissed her request for sole physical custody. At trial on October 11

and 31, 2019, evidence was adduced regarding the parties’ income and expenses, the children’s

private school education, and legal custody issues. The court heard testimony from Father,

Mother, Mother’s friend Lauren Lovett, each party’s mother, and the guardian ad litem (GAL).

 Legal Custody

 Substantial evidence was presented of Father’s bad conduct and self-described “crude,

unreasonable, and profane” text messages to Mother. Even though Father testified the texts

embarrassed him and admitted that he needed counseling for his anger, on appeal he refuses to

accept responsibility for his egregious conduct that consequently resulted in an award of sole

legal custody to Mother. Instead, he complains the trial court is punishing him for refusing to

pay for his children to attend Oak Hill Elementary by leaving the child support obligation

unchanged while simultaneously “stripping him of any decision-making authority related to the

 2
children’s education.” However, the trial court did not gratuitously grant Mother sole legal

custody. Instead, the court considered Father’s “pattern of extremely dysfunctional

communication,” which began shortly after the divorce. The court found a substantial change in

circumstances because Father’s “verbal abuse” escalated to a level that no reasonable person

should have to tolerate and rendered him unable to function as a co-parent in order to exercise

joint legal custody. 1

 Private School Education

 At trial, Father no longer contested the children attending Oak Hill. He merely objected

to paying for it. Tuition was approximately $40,000 per year (or $1,667 per month for each

parent). Shortly after Father filed his motion to modify on August 1, 2018, he refused to sign a

contract financially committing him to the school; however, at the last minute prior to the start of

school, he consented to an interim court order agreeing to Oak Hill, provided that he was not

required to pay his share of tuition during that calendar year. At trial – in spite of consenting to

Oak Hill – Father testified he did not “like this school,” was dissatisfied with the education, and

felt alienated by the school. But the trial court found Father “acknowledge[d] that the girls are

happy there,” and that he “complained about the school not giving him information when he, as a

joint legal custodian, did not seek out information from the school.”

 More troubling, Father attempted to pawn his children’s private school education in an

attempt to avoid expulsion from his country club after a Memorial Day 2018 altercation with

Mother’s friend, Ms. Lovett. He threatened Mother that if she did not persuade Ms. Lovett to

recant her accusations and save his membership at the country club, he would not permit the

1
 The court made numerous findings regarding Father’s extreme and profane verbal abuse, to include hateful racial
slurs, that we do not include here as he does not appeal the award of sole legal custody to Mother. However,
Father’s abusive conduct is relevant to his child support challenge.

 3
children to continue to attend their school. He made these threats in front of the children during

a custody exchange and caused them to cry. After this incident, Father refused to sign the 2019-

20 school year tuition contract in July 2018. He then filed his motion to modify on August 1,

2018. As a result, the trial court concluded that Father used “reasons that are not child-centered”

to seek modification of the Consent Judgment.

 In spite of finding Father’s objection to paying his share of tuition suspect, that the parties

had agreed the children would attend Oak Hill Elementary School, that the parties had equally

paid tuition for many years prior to the modification, and that the children were happy and well-

adjusted, the trial court still relieved Father of his previously agreed upon obligation to pay half

of private school expenses solely because “the girls have no special needs that public schools

cannot meet.”

 Child Support

 The trial court rejected both parties’ Form 14 child support charts as inaccurate and

calculated its own child support chart as required by Supreme Court Rule 88. 2 The trial court

found Father is a commercial real estate broker, whose commission-based income decreased

from $18,750 per month to an average of $16,472 over the past four years. The court noted that

his income for 2019 was historically less than he made in other years and therefore used a four-

year average for purposes of Form 14. Mother is a residential realtor whose commission-based

income increased from $8,333 per month to an average of $12,332 per month over the past two

years.

 Although the trial court did find a change in circumstances in Mother’s increased income,

it found Father’s decrease in income was the result of uncharacteristic income in 2019. The

2
 All Rule references are to the Missouri Supreme Court Rules (2020).

 4
court found Father did not present any evidence that his earnings would necessarily continue to

be lower in the future, nor that he was unable to pay court-ordered child support while earning

$16,477 per month. More specifically, the court found that Father leased a Mercedes for $968

per month; he belonged to two country clubs at an expense of approximately $1,200 per month

(that he joined while the case was pending); and he spent $2,200 per month for vacations and

recreation, according to his statement of income and expense. The court also found Father no

longer paid private school tuition and only contributed to the children’s extracurricular activities

if he agreed, and that his maintenance obligation ended in September 2019.

 The Consent Judgment provided Father a 10 percent Line 11 credit on the Form 14 for

overnight custody of five out of every 14 days, but the court’s Form 14 adjusted that credit to 29

percent for six out of every 14 days. However, the court found this was not a substantial change

in circumstances because the increased custody was anticipated in the Consent Judgment and did

not merit any corresponding change to the amount of child support.

 Finding Father failed to present evidence that the needs of the children had changed or

decreased since the date of dissolution, the trial court denied Father’s request to reduce his child

support obligation because he did not meet his burden and establish a substantial and continuing

change in circumstances to show the terms of the 2015 Consent Judgment were unreasonable.

This appeal follows.

 DISCUSSION

 In his sole point on appeal, Father alleges the trial court erred in finding he did not meet

his burden of proof to show a substantial and continuing change of circumstances to make the

original and existing amount of his child support obligation unreasonable because Father proved

that since the Consent Judgment was entered, (1) Mother’s income has increased; (2) Father’s

 5
income has decreased; and (3) the amount of Father’s overnight custody of the parties’ children

has increased. Father further asserts that the trial court is somehow “punishing him” for his

refusal to pay half of private school tuition and by finding that he failed to meet his burden of

proof to modify his child support, the court essentially ordered him to pay his share of tuition

“while simultaneously stripping him of any decision-making authority related to the children’s

education.” Father claims such action is impermissible and constitutes reversible error. Not only

is his argument without merit, it strains credulity such that we firmly reject it and affirm the

judgment of the trial court.

 Standard of Review

 When reviewing a trial court’s decision on a motion to modify, we will affirm the

decision unless there is no substantial evidence to support it, it is against the weight of the

evidence, or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32

(Mo. banc 1976). The trial judge is given the opportunity to determine the credibility of

witnesses. Rule 73.01(c)(2); Garner v. Garner, 973 S.W.2d 513, 514 (Mo. App. E.D. 1998).

 Analysis

 Modification of child support is governed by Section 452.370, RSMo, 3 which establishes

a prima facie showing of a substantial and continuing change in circumstances when there is a

change of 20 percent or more when the existing amount was based on the presumed amount

pursuant to the child support guidelines. Section 452.370. However, when the existing amount

is not based on the presumed amount, “a substantial and continuing change in circumstances

required to modify child support may be established by other ways. The paramount concern is

the welfare of the child, not the welfare of the husband or wife.” Brown v. Brown, 19 S.W.3d

3
 All statutory references are to RSMo 2016, unless otherwise indicated.

 6
717, 724 (Mo. App. W.D. 2000) (citing Moore v. Morgan, 723 S.W.2d 583, 584 (Mo. App. W.D.

1987)) (emphasis added). “The purpose of Section 452.370 is to impose a stricter standard for

modification, thereby discouraging recurring and insubstantial motions for modification.”

Brown, 19 S.W.3d at 724 (citing In re Marriage of Stanley, 793 S.W.2d 487, 488 (Mo. App. E.D.

1990)).

 The parent seeking the modification has the burden of proving the substantial and

continuing change in circumstances. Mann v. Hall, 962 S.W.2d 417, 420 (Mo. App. W.D.

1998); Section 452.370.2. A change in the parties’ financial circumstances or in the children’s

needs may be sufficient evidence to show such a change. Eaton v. Bell, 127 S.W.3d 690, 697

(Mo. App. W.D. 2004) (citing Potter v. Potter, 90 S.W.3d 517, 520 (Mo. App. S.D. 2002)).

Importantly, neither husband’s decreased earnings nor wife's increased income alone justifies or

requires a modification of the terms of an award. Magaletta v. Magaletta, 691 S.W.2d 457, 459

(Mo. App. E.D. 1985) (citing Early v. Early, 659 S.W.2d 321, 323 (Mo. App. 1983)). Moreover,

“[t]he party seeking modification has a heavy burden of proving he is unable to support his

children in the manner contemplated at the time the separation agreement was incorporated into

the dissolution decree.” Brown, 19 S.W.3d at 724 (citing Forhan v. Forhan, 693 S.W.2d 164,

165 (Mo. App. E.D. 1985)).

 Mother and Father’s change in income

 On appeal Father asserts the trial court erred because he met his burden of proof by

showing an increase in Mother’s income and decrease in Father’s income. We preface our legal

analysis of Father’s appeal with some very simple math. We begin with Father’s income and

financial obligations pursuant to the 2015 Consent Judgment. Father’s gross monthly income

was $18,750. He paid $4,000 per month in maintenance and child support, as well as

 7
approximately $1,667 per month in tuition for a monthly total of $5,667. Next, we consider the

same circumstances at the modification trial. The court found Father’s gross monthly income

had decreased by $2,278 to $16,472 and he was still obligated to pay $2,000 per month for child

support. However, he no longer paid $2,000 in monthly maintenance or $1,667 for monthly

tuition pursuant to the Consent Judgment, resulting in an approximate reduction of his financial

obligations of $3,667 per month. Even considering what the court found to be an

uncharacteristic reduction in his income of $2,278 per month, we note Father derived a financial

benefit of over $1,000 per month. Yet he appeals from the judgment of the trial court.

 While the trial court here did find a change in circumstance for Mother’s increased

income, this is not sufficient evidence to justify or require modification of child support. See

Mendelsohn v. Mendelsohn, 787 S.W.2d 321, 324 (Mo. App. E.D. 1990). Instead, other credible

evidence supported the court’s finding that Father failed to meet his burden of proof to show a

substantial and continuing change in circumstances sufficient to render his child support

obligation unreasonable. The record reflects that Father’s decrease in income appeared to be

based on uncharacteristic annual income in 2019, which the court did not find to be continuing,

and his financial obligations to pay maintenance and private school tuition had ended.

 Furthermore, Father failed to carry his burden and show that he could not meet his own

financial needs while continuing to meet his support obligation, or that the terms of the original

decree appear unreasonable. Magaletta, 691 S.W.2d at 459; Seelig v. Seelig, 540 S.W.2d 142,

147 (Mo. App. 1976). Father complained about Mother’s luxury vehicle even though he was

paying $968 per month for his own, but his burden was not to prove Mother’s financial needs if

she received less child support. Father was required to prove his own inability to meet his

financial needs. Indeed, he was able to meet his needs as the evidence showed that in addition to

 8
his Mercedes, he took luxurious vacations, recently joined two country clubs, and spent more

than $1,000 monthly on additional recreation. Despite Father’s testimony that his payments to

Mother caused him financial stress, the court also heard the evidence of the comfortable balances

in both his checking and savings accounts. Similar to the increase in Mother’s income, the

uncharacteristic decrease in Father’s earnings does not justify or require modification.

Magaletta, 691 S.W.2d at 459; Early, 659 S.W.2d at 323. The court did not abuse its discretion

in finding substantial evidence that the terms of the original decree were reasonable and that

Father was able to amply meet his financial needs while paying his child support obligation as he

originally agreed to do in the 2015 Consent Judgment.

 Line 11 overnight credit

 The court appropriately found the increase in overnight physical custody from 10 to 29

percent was not a substantial change in circumstances because the increase in time was

anticipated in the Consent Judgment and “could have, but was not, accounted for in the

judgment.” The increase in time (from five to six days for every 14 days) was based on a change

that occurred when the younger child turned seven years old. This finding of no substantial and

continuing change in circumstances was also supported by the evidence and was not an abuse of

discretion. Eaton, 127 S.W.3d at 697.

 Father’s assertion he is being punished for his refusal to pay tuition

 Father claims the trial court is punishing him for refusing to pay tuition for his children to

attend Oak Hill Elementary by leaving the child support obligation unchanged while

simultaneously “stripping him of any decision-making authority related to the children’s

education.” Father’s argument ignores the fact that he stripped himself of legal custody because

of his egregious conduct. He also ignores the simple math that the court’s judgment ultimately

 9
reduces his financial obligations pursuant to the Consent Judgment by more than $1,000 per

month, even while giving him the benefit of his “uncharacteristic” reduction in income. We find

nothing punitive in the trial court’s judgment. In fact, based on the record before us, we fail to

comprehend how Father actually met his burden of proof to show a substantial and continuing

change in circumstances in order to be relieved of his obligation to pay his agreed upon share of

private school tuition pursuant to the 2015 Consent Judgment.

 In a motion to modify seeking to terminate an obligation to pay private school tuition, the

particular educational needs of the child must be considered in conjunction with the moving

party’s burden to prove a substantial and continuing change in circumstances. Drury v. Racer,

17 S.W.3d 608, 611 (Mo. App. E.D. 2000). “The paramount concern is the welfare of the child,

not the welfare of the husband or wife.” Brown, 19 S.W.3d at 724. In addition, permitting

a child to continue attending a private school can be a condition essential to the child's welfare.

Schmidt v. Schmidt, 949 S.W.2d 117, 121 (Mo. App. E.D. 1997). The fact that a parent did not

agree to send a child to private school or does not want to pay for private school is not by itself

enough to deny child support for educational expenses. Drury, 17 S.W.3d at 610. However, a

parent’s lack of willingness to pay is a relevant factor. Id. The test for determining when a court

should order private schooling over the wishes of one parent is whether such schooling will meet

the particular educational needs of the child. Id. See also, Leslie v. Leslie, 948 S.W.2d 458, 462

(Mo. App. W.D. 1997) (appellate court affirmed modification order including private school

costs in child support calculation by giving deference to the trial court, which could reasonably

conclude private school “would meet the particular educational needs” of the child) (citing Leahy

v. Leahy, 858 S.W.2d 221, 226 (Mo. banc 1993)).

 10
 Father argues the trial court cannot directly or indirectly order him to contribute to the

cost of private school education when the children’s needs could be met by a public school,

citing Drury v. Racer, 17 S.W.3d 608 (Mo. App. E.D. 2000), Nelson v. Nelson, 195 S.W.3d 502

(Mo. App. W.D. 2006), and Seyler v. Seyler, 201 S.W.3d 57 (Mo. App. E.D. 2006). However,

he not only ignores the legal standard for modification of divorce decrees, requiring a substantial

and continuing change in circumstances, he extrapolates the consideration of a child’s particular

educational needs into being met simply because the same can occur in a public setting. This is a

mischaracterization of the law regarding a parent’s obligation to pay for private education,

especially in a modification proceeding when a parent has been paying tuition for many years

and unilaterally decides to stop without the agreement of the other joint custodian. Moreover,

these cases do not support Father’s argument that he cannot be required to continue to pay tuition

simply because a public school would meet the educational needs of his children.

 Nelson and Seyler decided issues of children’s education in the initial determination of

child support in dissolution proceedings. They demonstrate that determinations whether to

include private school tuition in child support awards are fact-specific, in a case-by-case analysis

of whether the schooling will meet the particular educational needs of the child. Nelson, 195

S.W.3d at 513; Seyler, 201 S.W.3d at 64-65. The Seyler court held the trial court erred in

ordering the child to attend the Catholic school, if the parties could not agree on the choice of

school, and in ordering the wife to pay half the cost of the Catholic school, based on the

husband’s failure to provide any information or evidence that attending the Catholic school

would meet any particular educational needs of the child. Seyler, 201 S.W.3d at 65.

 In fact, Nelson and other cases have held the opposite in similar circumstances. See,

e.g., Nelson, 195 S.W.3d at 513 (evidence was sufficient to demonstrate that private education

 11
would meet the particular educational needs of the parties’ children, and the record supported the

trial court’s dissolution decision to include it as an extraordinary child rearing cost in the Form

14 calculation); DeCapo v. DeCapo, 915 S.W.2d 343, 348 (Mo. App. W.D. 1996) (trial court did

not abuse its discretion in paternity case ordering Father to pay child support, including 64% of

child’s post-secondary education over Father's objection that child would not succeed at school);

Bold v. Bold, 912 S.W.2d 477, 481 (Mo. banc 1995) (dissolution award of support including

provision for private school upheld over Father’s contention that child should attend public

school).

 Only the Drury case cited by Father considered modification of a divorce decree but

bears no other similarities to this case. The Drury court considered the mother’s modification

seeking an order for the father to pay half of parochial school expenses. 17 S.W.3d at 609-10.

There the mother bore the burden of proof to show that private schooling met a particular

educational need of her child. Id. at 611. The divorce decree only generally ordered the parties

to split primary and secondary education costs for their then three-year-old child, and the

Catholic mother later enrolled the child in a parochial school without informing the non-Catholic

father. Id. at 609-11. The mother provided several reasons for enrolling her child in the same

parochial school she had attended. Id. But she was also employed by the local public school,

which she testified was a “fine school” and not in any way educationally inferior to the parochial

school. Id. at 610-11. Thus, the court held she failed to prove that private schooling met any

particular educational needs of her child and declined to modify the father’s child support

obligation to include tuition. Id. at 611.

 When modifying a dissolution, courts have required parents to pay for education

expenses where they have already agreed to do so, either implicitly or explicitly, and the

 12
evidence shows the schooling meets the particular education needs of the child. In Elliott v.

Elliott, 920 S.W.2d 570, 576 (Mo. App. W.D. 1996), the court held the record supported a

finding that private education meets the particular education needs of the child based on

curriculum and child care issues. The modification award included private school tuition as an

“extraordinary expense” warranting inclusion in the Form 14 for a child who had been less than

two years old at the time of dissolution and was almost ten years old at the time of modification,

and the father had never complained about the child’s private school attendance until he was

ordered to contribute to the cost. Id. Also, in Garner v. Garner, 973 S.W.2d at 515, this Court

affirmed a modification judgment including private education in extraordinary expenses on the

Form 14 where the father implicitly agreed to private education when he was informed of the

mother’s decision to enroll the children in a private school and did not object. He even attended

some events at the school. Id. This Court held the trial court did not abuse its discretion by

reasonably concluding that attending private school would “meet the particular educational

needs” of these children because the mother presented evidence supporting her decision to enroll

the children at the private school. Id. at 516.

 Here, even more obvious than Elliott or Garner’s implicit agreement to private education,

Father expressly agreed to pay for his children’s private school education in the 2015 Consent

Judgment and he did so for several years. Although the trial court found the parties’ children did

not have any special needs which could not be met by a public school, it also heard evidence on

the record that Oak Hill met the particular educational needs of the children such that they should

continue attending the private school.

 In conclusion, the court did not err in finding Father failed to meet his burden of proving

a substantial and continuing change in circumstances such that the terms of the original decree

 13
were unreasonable or that he is unable to support the children in the manner contemplated at the

time of the 2015 Consent Judgment while meeting his own financial needs. His failure to

communicate with Mother as an adult “stripped him from his decision-making authority related

to his children’s education.” There is nothing punitive in the denial of his motion to modify. In

fact, the trial court gifted Father with its discretionary decision to relieve him of his obligation to

pay for private education when it would have been equally reasonable in the court’s fact-based

analysis of these circumstances to find Oak Hill Elementary met the particular educational needs

of his children. Father’s point is denied.

 CONCLUSION

 The judgment of the trial court is affirmed.

 ____________________________________
 Lisa P. Page, Judge

Michael E. Gardner, P.J. and
James M. Dowd, J., concur.

 14